Casey, C. J.,
delivered the opinion of the Court.
On the first day of December, A. D. 1857, a patent was granted to Spencer Rowe for an “improvement in machines for making brooms.” On the fourth of the same month Rowe assigned all his interest in this patent to John Fox; and Fox, on the 2d of April, 1861, conveyed the same to the claimant. These assignments were duly executed and recorded. In 1858, and after he had assigned his interest to Fox, Rowe entered into a contract with the warden of the United States penitentiary for the District of Columbia to erect three of these machines within the penitentiary, and to operate them there, hiring the labor of convicts at forty cents per day for each one he employed. Rowe having failed to perform his contract, his machines were sold, and purchased for the use of the government by the warden. *8 Three more of the machines were added in May, 1861, and the whole of them operated under the direction of the warden, until the convicts were removed to Albany, New York, in the summer of 1862. The brooms manufactured by the use of these machines were sold, and the proceeds applied to the use of the United States, in the management and support of the penitentiary.
The claimant now brings this action to recover the profits which it is alleged the United States realized by the unauthorized use of the machines. After setting forth the facts fully in his petition, he states the grounds upon which he bases his right to recover in this case and in this court as follows :
“Your petitioner does not allege the existence of any express promise, upon the part of the agents of the government, to pay him any given sum of money for the use of his patent, but he does rely upon an implied promise, on the part of the government, to pay him for the use of his property, arising from an implication of law, to refund the money had and received to his use, in the manufacture and sale of the brooms by the use of his patent, as much so as if the broom com had been his property, instead of the patent; and upon another distinct ground of claim — the right of the government to take private property, if its convenience or necessity requires, and convert it to its own use in the public service, making just compensation therefor. He does not consider that the government in so doing commits a tortious act, so that no implied promise can arise on its part to pay the citizen for the value of the property taken, or a reasonable price for the use of it, if it shall be restored to him. That compensation ought to precede such taking; but, if not, the promise to pay, after the taking, arises from implication of law, and is as strong as a natural sense of justice and human obligation can make it.”
The solicitor for the United States demurs to the petition, alleging that this court has no jurisdiction of the case as set forth by claimant. This is the only question now before us.
The claimant’s counsel contends in his argument, as in his petition, that we have jurisdiction upon the grounds of an implied contract with the United States; that though the facts set forth would, as between individuals, constitute simply an infringement of a patent right, which in itself is a tort, and at common law, as well as under' the statute, is to be redressed by an “ action on the case,” yet as-the United States as a body politic is incapable of committing a tortious act, there is an implied agreement, when such acts are committed: *9 by its officers or agents, to compensate the party injured for the damage he has sustained; that though originally a tort, it may be waived and assumpsit sustained on an implied promise to pay; that, moreover, it was a “taking of private property for public use,” and that from the constitutional injunction to make compensation in such cases a promise to pay may be inferred and an action sustained thereon.
We think it quite clear that the circumstances set forth in this petition do not constitute such a taking of private property for public use as the Constitution of the United States contemplates in the clause referred to. We cannot believe that the framers of'this clause intended that every subordinate officer or petty agent of the United States might undertake to decide for himself when the exigency has occurred, or the necessity exists, for the seizure and appropriation of the property of the citizen. And every attempt on the part of any public officer to do so, unless justified by some pressing emergency or overruling necessity, is a simple trespass, for which he is amenable to the law, but for which, being beyond the scope of his powers, the United States is in nowise responsible. (Mitchell v. Harmony, 13 How., 115.)
In this case there was no seizure or taking of any tangible property belonging to the claimant; at most it was a mistaken and unauthorized use of a machine which he had an exclusive right to make, use, and vend. It was the disturbance or infringement.of his right, instead of the caption of his property.
The right of the claimant to this patent right is not disputed, nor is it controverted that this right has been infringed by persons apparently acting for and on behalf of the United States. The only question raised and discussed is whether this court has jurisdiction. What is the nature and character of the injury of which the claimant complains ? At common law the infringement or disturbance of a right of this kind was held to be a tort, for which an action of trespass on the case was the appropriate, if not the only, remedy at law. (Bull, N. P., 75.) Under our statutes in relation to patent rights the same form of action has been prescribed. The fourteenth section of the act of July 4, 1S36, enacts: “ Whenever in any action for damages for making, using, or selling the thing whereof the exclusive right is secured by any patent heretofore granted, or by any patent which may hereafter be granted, a verdict shall be rendered for the plaintiff in such action, it shall be in the power of the court to render judgment for any sum above the amount found by such verdict as the *10 actual damages sustained by the plaintiff, not exceeding three times the amount thereof, according to the circumstances of the case, with costs. And such damages may be recovered by action on the case in any court of competent jurisdiction.”
The seventeenth section of the same act provides “that all actions suits, controversies, and cases arising under any law of the United States granting or confirming to inventors the exclusive right to their inventions or discoveries shall be originally cognizable, as well in equity as at law, by the circuit courts of the United States, or any district court having the powers and jurisdiction of a circuit court.”
These provisions, it seems to us, not only designate the form of action — point out the mode of proceeding — -but specify the very tribunal in which the remedy must be administered. It is to be by action on the case; a verdict of a jury is to fix the amount of damages and the court to increase them, within prescribed limits, according to its discretion. The proceedings of this court are not according to the course of the common law. We have no jury; and it will be readily seen that, constituted as this court is, it would be impossible for us to take cognizance of these cases and meet the requirements of the acts of Congress. Besides all this, there is the direct and explicit enactment confining the jurisdiction to “the circuit courts of the United States or any district court having the powers and jurisdiction of a circuit court.”
The extent of our jurisdiction in cases originating by petition filed is limited and confined by the act of February 24, 1855, and are such claims against the United States as are “founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States.” There has been no pretence that this claim is founded upon an act of Congress, or any regulation of an executive department, or upon any express contract with the government of the United States. But it is alleged and argued that it comes within the other branch of' our jurisdiction — that is, an implied contract with the government of the United States. Let us now examine this ground and see whether it is well founded or not. The counsel for the claimant has argued with much ingenuity that the United States, as a body politic, is incapable of committing a tort, and authorizes none of its officers or agents to do so ; but where'one of them incidentally commits such wrong in the exercise of his legitimate employment, and the United States receives the benefit of his act, there is an implied en *11 gagement to compensate the injured citizen for the injury he has received. We will not affirm that no case can arise where this principle would be sustained; but we think we are safe in saying that the doctrine of an implied contract does not arise in any case out of the acts of an agent who has no power or authority to make an express one. It will scarcely be pretended that such subordinate agents as wardens of penitentiaries have the power to bind the faith and pledge the credit of the United States without express authority of law, or at least the order and direction of some superior officer of the government having lawful authority in the premises. But it is contended that this obligation arises not so much from the wrongful acts of the agents or officers of the United States as from the receipt of the proceeds or profits of the use of the machine; and that having received these profits from the wrongful use of the machine, the claimant may waive the tort, and sue as for money had and received to his use. It is not denied that there are many cases where one man tortiously receives the money of another, or wrongfully receives his personal chattels and converts them, that the injured party may waive the tort and bring indebitatus assumpsit, to recover for money had and received. (1 Chitt. Pl., 113; 4 B. & C., 310; 6 D. & R., 625; 5 B. & A., 808; Longchamp v. Kenney, Doug., 137; Jones v. Hoar, 5 Pick., 285; Willet v. Willet, 10 Watts, 277; and many other cases.) The principle upon which such an action is sustained is that the property thus tortiously converted must be considered as still remaining in the original owner, and therefore the price of such property obtained by the defendant by the sale of it must be regarded as money had and received to the use of the original proprietor. (Abbott v. Burry, 5 Moore, 98; Id., 525; 2 T. R., 144; 2 Stra., 916; 12 Mod., 324.) But the doctrine here stated does not apply in this case, for the obvious reason that the claimant had no interest in or title to the property sold, and out of which the money claimed arose. The brooms when made by this machine were simply and exclusively the property of the United States; the claimant “had neither part nor lot in them.” So much was decided.by the Supreme Court of the United States, in Simpson et al. v. Wilson, (4 How., 707,) where it was held that the assignee of a patented machine for a certain district or territory might sell the product of the machine elsewhere out of his territory without being liable to the patentee or his assignee for the territory where such product was sold. In other words it is the machine itself and not its product that is protected by the letters patent. The injury he sus *12 tained, therefore, was not the sale and conversion of his brooms, but the unauthorized use of his invention in making them. This was an infringement of the right the statute conferred upon him — nothing more and nothing less — and for this specific injury the statute, as we have seen, has not only provided specific remedies, but designated the special tribunal that shall administer them. We think those remedies were appropriate and ample, and those courts open to the claimant, but this we are not called upon to decide; and all we now adjudge is that our jurisdiction, limited and defined as it is by statute, does not embrace this case, and we therefore dismiss the petition.
Mr. T. J. D. Fuller for the claimant.
Mr. J. D. McPherson, Assistant Solicitor, for the government.
Hughes, J., not having heard the argument in this cause, took no part in the decision. ,