**FERGUSON et al. v. UNITED STATES.**

No. M–65.

Court of Claims.

May 6, 1946.

Wm. J. Wesseler, of Cleveland, Ohio (Joseph B. Keenan, of Washington, D. C., on the brief), for plaintiff.

J. Y. Houghton, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen. (J.

F. Mothershead, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

LITTLETON, Judge.

This suit involves the alleged unauthorized use or infringement by defendant of U. S. Patent No. 1,089,405 to William S. Ferguson March 10, 1914, for a "Reinforced Concrete Dock or Pier." Pursuant to an assignment by Ferguson the patent was issued to James D. Carey. Ferguson's original application was filed March 5, 1909, and his renewal application, on which the patent in suit was issued, was filed November 1, 1912, under R.S. § 4897.

Specifically plaintiffs' charge that fifteen reinforced concrete docks and piers acquired or constructed by defendant during the period 1916 to 1929 infringed the claims of the patent, that is, that the defendant used, without the consent of the owners of the patent, the subject matter or invention covered by certain claims of the patent. Four of the alleged infringing dock structures were constructed by or for the Government within a period of six years prior to the institution of this suit and eleven of the docks or piers were constructed by contract prior to the period of six years before the filing of the petition. As to the last-mentioned structures, plaintiffs claim compensation for their continued use during the six-year statute of limitation period prior to the date on which the petition was filed. The patent expired March 10, 1931, one month after filing of the petition.

The Government interposes the main defenses of (1) noninfringement, (2) justification under prior art disclosures, and (3) invalidity through anticipation by the prior art. In addition the Government relies on the statute of limitations and laches as to eleven of the alleged infringing structures and also asserts that certain necessary parties have not been joined as parties plaintiff.

Plaintiffs contend that nine claims of the Ferguson patent (claims 1, 2, 4, 6, 12 to 16, inclusive) have been infringed by defendant. These nine claims are set forth in full in finding 25 and it is not necessary to repeat them here. The essence of the Ferguson invention is disclosed in Fig. 1 (finding 19) of the patent reproduced below:

FIG 1.—Ferguson patent.

The text of the specification indicates that the invention is directed to a reinforced concrete construction having the reinforcing metallic elements so distributed as to stand the various strains incident to the weight of the structure itself, the loads carried by the structure, and such strains as will be caused both by the docking and the mooring of a ship or boat. The objects of the invention, as stated in the specification, are:

"First. To build a structure which is economical with respect to the amount of material and labor required. Second. To distribute the metallic reinforcing elements so as to obtain the reinforcements at proper point for sustaining the several weights and strains incident to such structure. Third. To shape the contour of general structure of concrete, so that the material is positioned and reinforced to insure the maximum strength, while materially reducing the weight, as compared with prior structures, and thereby adapting it to be built upon piling along marshy shores or above semisubmerged or other soft ground. Fourth. To construct a dock or pier, which is supported primarily by piling driven below the water line, and which distributes the weight or shock over series of said piling. Fifth. To construct a dock or pier having a subfloor with suitable shore anchorage, and one which carries the weight or portions thereof upon said floor, and transmits the shock or portions thereof through said floor to the shore anchorage."

Following the listing of the enumerated objects of the invention, the specification then summarizes these objects by stating that, "In consequence, the said structure is one which *transfers normal shock or stress below the dock level,* and thereby minimizes any tendency toward the displacement of the dock." [Italics supplied.]

The figure above is a cross-section of a dock built in the water alongside the bank and referred to in the art as a marginal dock. As disclosed in this figure, the construction is an L-shaped concrete structure comprising a front wall 8′ formed integrally with a horizontal subfloor or base structure 4.

The base portion of the structure is supported upon two parallel series of rows of wooden piles, the front series being out in the stream and the rear series being adjacent the shore. These piles, as stated in the specification, are cut off below the water level. The subfloor or base is located adjacent the tops of the piles.

The cross-section of the front wall resembles that of an I-beam or girder, and at suitable intervals, along the front wall and some 10 to 15 or 20 feet apart a series of concrete triangular webs, indicated in the figure as 7′, connect the front wall with the base or subfloor for the purpose of transmitting compression strains from the top of the front wall to the rear of the subfloor. Steel reinforcing rods are located in the triangular bracing walls so that tension stresses as applied to the top of the front wall can also be transmitted through the webs to the rear and intermediate points of the subfloor.

The overhang of the front wall is also provided with a plurality of lateral bracing webs at suitable intervals.

Both the horizontal subfloor and vertical front wall are continuous in nature, the sub-floor being reinforced by a series of reinforcing bars parallel to and located above the rows of piles. In addition, the sub-floor is reinforced by front to rear steel tension members 5 and 5′, which are located both at the top and bottom of the floor slab. The top of the I-beam or front wall is also reinforced by steel members running parallel to the rows of piling.

The front wall, while shaped in the form of an I-beam, is a continuous structure integral with the base or subfloor and is therefore not a beam in the sense that it extends between two supports or columns. The entire dock structure is tied to the shore by means of tension members 9 which extend back to a suitable shore anchorage.

The working or operating floor of the dock is level with the top of the front wall, the specification indicating that the space between this upper floor and the subfloor may be packed or filled with earth, cinders, or any suitable material. The specification also suggests that apparatus, cargoes, etc., can be supported upon the sub-floor.

Should a lateral thrust occur, such as would be caused by the impact of a vessel against the top of the front wall of the dock compression stresses would be transmitted through the lateral bracing walls to the subfloor and the structure would tend to pivot around the point where the front wall is joined to the subfloor, the stresses thus being transferred below the dock level, thus placing the rear series of piles in compression and the front series of piles in tension, the piles thus ultimately absorbing the stresses. If a tension stress is imparted to the top of the front wall such as would be caused by a vessel warping itself up to the dock, such stress would be transmitted through the tension members embedded in the lateral bracing walls, this form of stress ultimately appearing in the front series of piles as a compression stress and in the rear series of piles as a tension stress.

The shore anchorage would assume some share of tension stresses.

The patent specification emphasizes in the following phraseology the importance of the subfloor:

"Ultimately the shoreward section and its anchorage must be dependent upon in structures of this character; hence the importance of the weighted subfloor and the shore anchorage, should not be underestimated. Figs. 1 and 2 illustrate the preferred form assumed by the portion of the dock or pier adjacent to the shore, but it will be understood that I may employ equivalent features. for those therein shown and specifically described."

There is no suggestion in the patent specification that either the lateral bracing walls, or triangular concrete webs, 7' or the subfloor or base 4 could or should be dispensed with in either of these modifications.

None of defendant's structures embody the front wall, the subfloor, or base, or the concrete triangular bracing webs extending from the top of the front wall to the rear of the subfloor. All of the 15 alleged infringing structures of defendant, which are listed in finding 36, and illustrated and described in some detail in findings 37 to 44, inclusive, are shown by the proof to be of the conventional dock type in which the single reinforced floor slab is placed at the surface or traffic level of the dock and in which there exists no L-shaped structure, no subfloor, and no triangular concrete bracing members. This deck floor slab of defendant's structures is carried on integral reinforced concrete beams or girders which are constructed with the standard or conventional type of beam reinforcement, which was old in the art, adapted to transfer the superimposed floor load to individual supporting columns or concrete piles at the ends of the girder spans. Some of defendant's structures are of the open pier type, but in every instance, as above stated, they comprise a single floor slab at traffic level with depending reinforced joists and girders which operate to transfer the load to widely spaced columns or piles.

Reinforced concrete was old in the art (findings 47 and 48), as were concrete girders or beams and reinforced concrete piles and enlarged casings as disclosed by patents to Hennebique (1897 and 1898), to Mouchel (1903), and an article published by Koetitz in 1906 (findings 47–49).

The Government structures in certain instances (finding 37) use a series of struts and beams to brace the columns or piles intermediate the traffic floor level and the base of the piles, which construction is also disclosed in the prior art as exemplified by the Mouchel patent (finding 48). The steel reinforcing used in the Government construction is of the conventional Hennebique type with tension members in the lower portions of the beams and girders and elsewhere where the structure would be submitted to tension, and with the Hennebique stirrups to overcome shearing stresses.

None of the Government docks or piers embody a wall or any structure "which transfer normal shock or stress below the dock level, and thereby minimizes any tendency toward the displacement of the dock," which is the main function of the L-shaped sub-floor structure of the patent in suit.

From the above facts, which are clearly established by the evidence, it must be held that there has been no infringement of

claims 1, 2, 4, 6, 12, and 13 to 16, inclusive, of the patent (findings 56–59).

Claims 1, 2, and 4 are directed to the L-shaped structure of the Ferguson patent having a front wall integral with the sub-floor and these claims are not applicable to the Government structures which have a single high-level floor mounted on piles. Claim 6 calls for a row of piles, a concrete wall erected thereon with reinforcing members in its base, and a reinforced concrete subfloor. Defendant's structures do not have either a wall or the floor called for by this claim. Claims 12, 14, and 16 refer, respectively, to a concrete floor and a longitudinal concrete wall integral with said floor, or a concrete wall erected upon one series of piling and an integral horizontal girder-floor, or a concrete wall and a horizontal concrete floor integral with said wall. These claims, when interpreted by the disclosure of the patent, are not applicable to the defendant's docks which have no vertical wall erected upon a row of piling but have a single reinforced floor at the dock traffic level.

Claims 13 and 15 of the patent are the broadest claims in suit. They are as follows:

"13. In a reinforced concrete dock, the combination with the supporting piling, of an integral dock structure constructed thereon and inclosing or embracing the heads of the piles, metallic reinforcing members extending through the concrete structure adjacent to the heads of said piles, additional reinforcing members disposed within the dock structure, a shore anchorage and means for attaching the dock securely thereto, substantially as set forth."

"15. In a reinforced concrete dock, the combination with suitable supporting-means, of an integral concrete girder and horizontal girder-floor extending at an angle therefrom, and carried by said supporting means, reinforcing members embedded in said girder and girder-floor,

and means securing the structure to the shore, substantially as set forth."

The literal phraseology of these two claims is readable upon *any reinforced concrete dock or pier* structure such as the Government structures or those structures disclosed by the prior art patent to Mouchel and the publication by Koetitz. However, when the terminology of these claims is interpreted by reference to the patent specifications and the disclosures of construction and function set forth therein and limited thereto in the light of the file-wrapper history of the patent (finding 27), such claims have not been infringed.

In view of our conclusion that none of the claims in suit have been infringed it is unnecessary to discuss the defense of invalidity through anticipation by the prior art and other defenses, except to say that if any of the claims involved should be construed with sufficient breadth to apply to the defendant's structures, such claim would be equally applicable to substantially similar structures in the prior art and would therefore be invalid because of anticipation.

Plaintiffs cite and discuss at considerable length six decided cases [1]—the first four of which were decided in favor of validity and infringement of certain claims of the Ferguson patent. The claims involved and the description of the alleged infringing structures involved in these cases are detailed in the findings herein (29–34). We find it unnecessary here to discuss the facts and the decisions of the cases decided in favor of the plaintiffs for the reason that they are inapplicable to the facts and the types of Government structures here involved.

Plaintiffs are not entitled to recover and the petition is dismissed. It is so ordered.

WHALEY, Chief Justice, and JONES, Judge, concur.

MADDEN and WHITAKER, Judges, took no part in the decision of this case.

[1] Detroit Iron & Steel Co. v. James D. Carey et al., 6 Cir., 236 F. 924; City of Detroit. Mich., v. Kahn et al., 6 Cir., 22 F.2d 313; Detroit Railway & Harbor Terminals v. William S. Ferguson et al., 6 Cir., 41 F.2d 688; Wabash Railway Co. v. The Dock & Terminal Engineering Co., 6 Cir., 56 F.2d 574; Dock & Terminal Engineering Co. v. The Pennsylvania Railroad Co., 3 Cir., 82 F.2d 19, and Carey, et al. v. Ford Motor Co., 6 Cir., 115 F.2d 204.