## STEINBERGER v. UNITED STATES.

### No. 44686.

Court of Claims.

Feb. 3, 1947.

Nathan M. Lubar, of Washington, D.C. (Lubar & O'Keefe, of Washington, D.C., and Weinstein & Levinson, of Washington, D.C., on the brief), for plaintiff.

T. Hayward Brown, of Washington, D. C., John F. Sonnett, Asst. Atty. Gen. (T. Hayward Brown and William W. Fleming, both of Washington D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and MADDEN, JONES, LITTLETON, and WHITAKER, Judges.

MADDEN, Judge.

This is a suit by the Estate of Louis Steinberger, deceased, to recover compensation from the United States for the use by it of insulators which, the plaintiff says, were covered by a patent issued to Steinberger, and owned, at the time of the use in question, by his estate. The patent, No. 1,702,235 was issued on February 12, 1929, on an application filed in the Patent Office on June 27, 1921. The alleged infringing insulators were bought by the United States from the Locke Insulator Corporation under a contract dated June 10, 1935, and were delivered shortly thereafter. The original petition in this case was filed on May 27, 1939, by Josephine Paula Steinberger who had been appointed executrix of Louis Steinberger's estate on June 26, 1935. Josephine Paula Steinberger is now deceased and the suit is continued by the Estate of Louis Steinberger.

Steinberger's patent was entitled "System of Line Insulation and Insulators Therefor." The problem which it purported to solve was that of the destruction of insulators by the passage through the insulating substance of strong currents of electricity at times when the line was overcharged by lightning or some other excessive surge of current. When the current, in passing from the line to the ground, that is the cross arm of the pole or the nearest grounded object, passed through the porcelain or other insulating substance, it heated the substance and tended to crack and destroy it. The Steinberger patent was for a dome-shaped hollow insulator of porcelain or other suitable substance attached rigidly to a metal ring at its large end which metal was to be bolted to the cross arm or other structure carrying the line. At the top of the dome was a metal fastener to which the line was to be attached. Inserted into this

fastener, and extending down through the hollow of the dome to a point lower than the plane of the metal ring, which was at the bottom of the dome, was a metal rod. This rod, being connected with the line which was attached to the fastener at the top, would be charged with electricity. If there was an excess charge on the line, the point where the charged metal came nearest to a grounded conducting substance would be the point where the rod intersected the plane of the iron ring at the bottom of the dome. At this point, then, the discharge or spark-over would take place, and the current would thus pass through the air and not through porcelain or other breakable substance. In the plaintiff's patent, but claimed only in No. 3 of the Claims as set forth in our finding 8, there was added, at the top of the insulator, a "stress distributing hood," an umbrella-shaped cover for the insulator which curved downward and whose rounded edge therefore extended toward the grounded metal ring which was at the base of the dome. Since the edges of this hood extended beyond the outside surface of the insulating substance, any spark-over which passed from the edge of the hood to the ring or the heads of the bolts which fastened the ring to the cross arm, would not pass through the insulating substance and hence would not tend to break or heat it. The make-up of the Steinberger device is shown in the drawing in our finding 7.

As shown in our findings 14 and 15, the insulators purchased by the United States from the Locke Insulator Company used the devices described in the Steinberger patent. If the patent was valid, the owner of the patent would seem to have been entitled to compensation, under the provisions of the Act of June 25, 1910, as amended by the Act of July 1, 1918, 40 Stat. 705, 35 U.S.C.A. § 68.

The Government says that the Steinberger patent was not valid, because of anticipation and lack of invention. The Government has put in evidence a long list of patents and publications which were available to those skilled in the art prior to June 27, 1921, the filing date of the Steinberger application. None of these patents or publications was cited by the examiner in the Patent Office who passed upon the Steinberger application.

Our finding 18 discusses an article "The Special Problems of Aircraft Wireless—VIII" by H. M. Dowsett, in the magazine, The Wireless World, published in August 1916. It, with the sketches printed in the article, shows an understanding of the problems of carrying the charged lines of wireless equipment through a wall or a plate, explains the advantage of a hollow insulating shell, and of rounding the edges of the hole or ring through which the line passes, for the purpose of distributing and reducing the electrical stresses and preventing damage to the insulating material. The stress distributing hood, included in Steinberger's Claim No. 3 is shown just as it is in the Steinberger patent. The only substantial difference between figure 18 of the Dowsett article and the Steinberger patent is that in the former the insulating material is shown as covering the metal ring to which the spark-over would perhaps pass, while in the Steinberger patent the insulating material is omitted at that point.

In our finding 19 we discuss and show a sketch of a British patent to Burdon, issued in 1914, which, we conclude, had all the essentials of the Steinberger patent, except the stress-distributing hood which was, however, specifically disclosed, as we have said, by the Dowsett article. The Burdon insulator was a double dome of insulating material with a conductor running axially through the hollow space, a ring of conducting material inside the insulator at the level where the insulator would be fastened to the grounded structure, and this ring of conducting material connected by conductors passing through the insulating material and attached to the metal ring which was, in turn, fastened to the wall or plate of the structure through which the line was to pass, and was thus grounded. The purpose of Burdon was to prevent brush discharges and corona effects on insulating material. These seem to be of the nature of an electrical discharge preliminary to a spark-over. The same device which would channel these discharges through the air to a conducting ring connected with the ground, instead of permitting them to pass through insulating material, would

of course operate in the same way if the discharge rose to the intensity of a spark-over. As we have said, the Burdon British patent anticipated all of Steinberger's patent except the stress-distributing hood which was disclosed by the Dowsett article, and the attachment of which to the Burdon insulator is a mere mechanical adaptation obvious to one skilled in the art.

In 1919 the Navy Department made drawings and initiated negotiations with two manufacturing companies for the furnishing of dome-shaped porcelain insulators which, when they were delivered to the Government by one of the companies in 1920, were substantially identical with the insulators described in the Steinberger patent applied for on June 27, 1921.

The plaintiff claims that Steinberger conceived his invention and reduced it to practice several years before he applied for his patent, and that, therefore, his priority should date from the earlier period. It insists that it has proved that "some time between June 27, 1914 and March 1, 1917" Steinberger conceived and reduced to practice his invention. This long and indefinite period is based on the testimony of witnesses who were during that period employees of the Navy and who testified that they had conversations with Steinberger about the principles later described in his patent, and saw sketches and insulators modified by him to embody his ideas. They could only testify that this occurred at some time within that period. One of the witnesses testified that insulators embodying the Steinberger principles were installed on submarines "as a business proposition" in 1917 at about the time of the beginning of the war. If this testimony is accurate, it would seem to invalidate the Steinberger patent, for the provisions of R.S. 4886, 35 U.S.C.A. § 31 at that time prevented the granting of a patent if the device had been in public use for more than two years before the application for the patent.

We have found that the plaintiff has not satisfactorily proved conception and reduction to practice at a time earlier than Steinberger's application. In addition to the indefiniteness of the evidence as to just what it was that Steinberger had or did in the period covered by the testimony, there is strong circumstantial evidence that his ideas did not become definite until about the time of his application for a patent. Our finding 9 shows that Steinberger was a prolific inventor in the field of insulators and insulating materials. Between November 14, 1916, and October 28, 1924, he filed some 110 applications for such patents, which applications later resulted in the issuance of patents. Seventy-two of these were filed prior to June 27, 1921, the date of his application for the patent here in question. It seems to us most improbable that if he had thought that he had matured his ideas to the point of a useful invention he would have delayed for so many years, during which years he was having constant contacts with the Patent Office, before applying for a patent. From our finding 11 it appears that as late as April 10, 1919, Steinberger wrote to the Navy Department enclosing blueprints of what he described in the letter as improved types of insulated bushings. The insulators pictured in the blueprints have solid masses of insulating material between the current line and the metal ring or flange, and in no way suggest the ideas of the patent applied for two years later. Our finding 12 shows that in March 1921, he forwarded to the Navy Department for testing an insulator which embodied the ideas of the patent which he applied for in June of that year. This action indicates that his application for a patent was substantially contemporaneous with his conception, in definite form, of the insulator described in his application.

Revised Statutes, Section 4886, 35 U.S.C.A. § 31, was as follows in 1921 at the time of Steinberger's application for his patent: "Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than two years prior to his application, and not in

public use or on sale in this country for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor."

We have concluded that the plaintiff has not shown that Steinberger made his·alleged invention before the publications and the use which we have discussed. But if the plaintiff had proved that Steinberger's invention preceded these publications, the patent would still be invalid because these publications antedated by more than two years the filing of Steinberger's application.

The Government's defenses of anticipation by the prior art, and of lack of invention, have been established. The plaintiff's petition will be dismissed.

It is so ordered.

JONES and LITTLETON, Judges, concur.

WHITAKER, Judge, and WHALEY, Chief Justice, took no part in the decision of this case.