### IRVING AIR CHUTE CO., Inc. v. UNITED STATES.
#### No. 49479.
United States Court of Claims.
Nov. 7, 1950.

Alexander C. Neave, New York City, Royal R. Rommel, Washington, D. C., Harry R. Pugh, Jr., New York City, and Charles M. Allen, Louisville, Ky., on the brief, for plaintiff.

E. R. Weisbender, Washington, D. C., H. G. Morison, Asst. Atty. Gen., and Roy C. Hackley, Jr., Washington, D. C., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff sues the United States for "reasonable and entire compensation" for the manufacture and use by the United States of certain patented inventions owned by the plaintiff. The plaintiff invokes the jurisdiction granted to this court by Section 1498 of Title 28 of the United States Code Annotated, the pertinent part of which reads as follows: "Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture."

The Government moves to dismiss the petition because, it says, the asserted cause of action is barred by the statute of limitations, the period of which is six years. 28 U.S.C.A. §§ 2401 and 2501. The petition was filed on February 3, 1950. If the "cause of action" accrued prior to February 3, 1944, it would, therefore, be barred. The Government attached to its motion to dismiss, as an appendix, a letter from a representative of the plaintiff to an agency of the Government, dated November 26, 1943, asserting that certain devices which the Government had caused to be manufactured and was using were covered by the plaintiff's patents. The Government urges that this letter shows that the asserted cause of action here sued on arose some time before February 3, 1944, and that the petition filed February 3, 1950, was, therefore, filed too late.

The plaintiff says that its letter of November 26, 1943, did not, in fact, assert that the Government was then manufacturing or using devices covered by all of the seven patents or the 92 claims under those patents which are included in the present suit. It says that one of the patents here sued on was not mentioned at all in the letter, and that as to several others, the letter said only that if the Government made certain changes in its devices, which the plaintiff understood that it intended to make, the changed devices would be covered by the plaintiff's patents. The Government seems to urge that if before February 3, 1944, it manufactured or used any devices

covered by any of the plaintiff's patents relied on in this suit, the plaintiff's "cause of action" is barred by the statute of limitations, and the entire suit must be dismissed. The plaintiff, on the other hand, urges that even as to a patent or a claim under a patent covering devices which the Government manufactured before February 3, 1944, it can recover for such articles as were manufactured after that date, i. e., within six years of the date of filing of its petition.

■ The Government urges, rightly, that 28 U.S.C.A. § 1498, is in effect, an eminent domain statute, which entitles the Government to manufacture or use a patented article becoming liable to pay compensation to the owner of the patent. It then contends that by the mere fact of manufacturing or using, it acquires a license to continue to manufacture or use for the duration of the patent. It says there is a taking, once and for all, and the "cause of action," the right to sue in this court for "reasonable and entire compensation" under 28 U.S.C.A. § 1498 then accrues, once and for all, and suit must be filed within six years thereafter. The eminent domain theory of the statute is supported by expressions of the Supreme Court of the United States. See Crozier v. Fried Krupp, 224 U.S. 290, 32 S.Ct. 488, 56 L.Ed. 771; Waite v. United States, 282 U.S. 508, 51 S. Ct. 227, 75 L.Ed. 494. Before the enactment in 1910, 36 Stat. 851, of the statute which, as amended, is now 28 U.S.C.A. § 1498, this Court held that action by the Government which, if it had been done by a private person would have constituted an infringement of a patent, was a tort, for which the Government had not, at that time, consented to be sued. Pitcher v. United States, 1 Ct.Cl. 7, 8. See also Crozier v. Fried Krupp, supra. It was not possible, before the Act of 1910, to sue the United States for the manufacture or use of a patented device unless there could be spelled out of the circumstances a contrast implied in fact to pay the owner of the patent. Crozier v. Fried Krupp held that after the Act of 1910, even though there was no express or implied license authorizing the Government to use the patent, its use was

not tortious and the officer making the use could not be enjoined from doing so. The use was a taking, made lawful by the Act of 1910 which provided the procedure whereby the owner of the patent would be compensated. We do not think, however, that the fact that 28 U.S.C.A. § 1498 is, in effect, an eminent domain statute answers the question presented by this case.

It is true, of course, that in the usual case of a taking of property or property rights by the Government by eminent domain, there is one complete taking and one complete accrual of the right of the owner to compensation. By the Government's declaration, or by its conduct, the scope and duration of the interest which it takes can be ascertained and evaluated. This cannot be done in cases where the owner of a patent seeks relief under 28 U.S.C.A. § 1498. Assuming that the Government is "taking" a license by eminent domain, rather than committing the tort of infringement, it is not possible, at the time of the first "taking," to ascertain the scope and duration of the interest taken. The license, if it be one, is a nonexclusive license leaving the owner of the patent, and others licensed by him free to manufacture and use under the patent. There is no statement by the Government, and of course there could not be, of how many of the patented articles it proposes to manufacture and during how long a period. If the law requires the patent owner to learn, at his peril, what the Government is doing, perhaps experimentally, in trying to adapt the patented device to some purpose useful to it, and if he must sue promptly in order to keep from being prevented by the statute of limitations from suing at all, the judgment which can then be rendered will be almost pure conjecture, and will almost surely be too large or too small. If it is based only on the number of articles already manufactured, it may be that though in the early years only a few of the articles were made, after the judgment the device was so perfected that large numbers were made. This result, unjust to the plaintiff, could hardly be avoided by questioning the army authorities, for example, as to how many of the rifles, or as

in this case, parachute devices they thought would probably be made. The only honest answer they could give would be that if a better rifle or parachute attachment was not developed, and if the cold war continued or a shooting war occurred, and if the nature of warfare did not radically change, within the unexpired period of the patent, something like so many of the patented articles might be made. If a judgment were based upon such guesswork, it might well turn out to be grossly unjust to the Government, or to the owner of the patent.

Government counsel suggest that the impossible situation described above could be avoided by permitting the owner of the patent to bring further suits, from time to time, as the Government manufactured more of the patented articles, if, but only if, he had brought his first suit within the period of the statute of limitations after the Government's first manufacture or use of the device. It is not suggested how this succession of lawsuits, all based upon what the Government contends to be one complete and final taking by the Government of a license to manufacture or use the patented device for the duration of the patent, could be reconciled either with the basic theory for which the Government contends, or with recognized doctrines of *res adjudicata*. We think a more just and more rational solution of the problem may be found.

■ The statute, 28 U.S.C.A. § 1498 giving the owner of a patent the right to sue the Government for reasonable and entire compensation for the manufacture or use of his patented device does not tell us, expressly, whether only one cause of action, or several, will accrue from a succession, perhaps with long intervals between, of manufactures or uses by the Government. Hence to insist as does the Government, that the text of 28 U.S.C.A. § 2401 which provides that every civil action against the United States must be commenced within six years after the right of action first accrues, and of 28 U.S.C.A. § 2501 saying the same as to claims of which this court has jurisdiction, bars completely such actions or claims as are here sued on, is really to beg the question. If the "right of action" or "claim" for the recent manufacture or use of the patented devices did not "accrue" until the manufacture or use occurred, then the texts of these sections do not apply to them. On that question, we conclude that the rights of action or claims sought to be enforced in the present suit, for actions of the Government after February 3, 1944, did not accrue before that date, and are not barred by the statute of limitations. This Court has so decided in cases arising before the Act of 1910, in which cases liability was based upon a contract. Berdan Fire Arms Mfg. Co. v. United States, 26 Ct. Cl. 48, affirmed 156 U.S. 552, 15 S.Ct. 420, 39 L.Ed. 530; Butler v. United States, 23 Ct.Cl. 335, 340. And in other cases arising since the Act of 1910 it has, by *dictum* recognized the rule. Fauber v. United States, 37 F.Supp. 415, 93 Ct.Cl. 11; Ferguson v. United States, 65 F.Supp. 580, 106 Ct.Cl. 626; Steinberger v. United States, 69 F.Supp. 403, 108 Ct.Cl. 142; Dickey v. United States, 84 F.Supp. 741, 114 Ct.Cl. 439. The Government reminds us that it did not, in these cases urge the doctrine which it now urges, and that the decisions should not, therefore, carry the weight of contested decisions. We recognize the force of this argument, but we now, after reconsideration, adhere to the doctrine of those cases.

We are fortified somewhat in our conclusion by another statute, though it is not directly applicable. In the statutes relating to suits by owners of patents against private alleged infringers, the third paragraph of 35 U.S.C.A. § 70 provides that recovery may be had for any infringement committed within the period of six years prior to the filing of the complaint in the action. Here Congress recognized that successive acts of infringement were, for this purpose at least, separate bases of suit. We recognize of course that Congress, having made its intention clear in the case of the private litigants might have done the same in the case of suits against the Government on patents, if it had so intended. We think however, that the negative inference is not so likely to be correct as the inference

that Congress would have desired that 28 U.S.C.A. § 1498 should, though not specific on the point, be given, if the text would permit, the same interpretation which the clear language of 35 U.S.C.A. § 70 gives for private litigants. Congress did say, in 28 U.S.C.A. § 1498, that the patent owner should be given "reasonable and entire compensation" for the Government's use of his patent. We think that if one suit must suffice for all uses by the Government, past and prospective, it would be impossible to determine what compensation would be reasonable or entire, and the statute would be to that extent, frustrated by the statute of limitations.

The Government's motion will be denied.

It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER, and LITTLETON, Judges, concur.