UMC ELECTRONICS COMPANY,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 335–80C.

United States Claims Court.

Dec. 16, 1983.

Robert H. Montgomery, Costas, Montgomery & Dorman, P.C., New Haven, Conn., for plaintiff.

John Fargo, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## ORDER

COLAIANNI, Judge.

Plaintiff on November 8, 1983, filed a motion to supplement the record by receipt in evidence of Exhibits 68, 69 and 70. Plaintiff contends that the defendant's response to paragraph 5(o) of the amended patent that it had not procured over 5,000 accused aircraft counting accelerometers (ACAs) from the Systron-Donner Corporation (SDC) since 1970 was "untruthful." Plaintiff urges that defendant's denial of having procured over 5,000 ACAs from SDC can be demonstrably proven to be false by the defendant's previous answers and supplemental answers to plaintiff's third and fourth set of interrogatories. Thus, plaintiff argues that its motion should be allowed or, in the alternative, that defendant be required to truthfully answer paragraph 5(o) of plaintiff's amended petition.

 While defendant's opposition to the motion is mainly grounded on the disadvantage it would experience if the exhibits are received and used by plaintiff to argue commercial success of its patented invention, defendant also halfheartedly[1] argues that its answer to the amended petition is correct if procurement is interpreted to refer to the date it ordered the ACAs, rather than the date on which they were delivered. Defendant also opposes the motion because during trial it was precluded from soliciting

1. Defendant's argument is assumed to be halfheartedly made, since it is relegated to a footnote in its opposition paper.

2. This argument is quickly disposed of, since even defendant, we can assume, recognizes

testimony that could have been used to rebut plaintiff's claim of commercial success. Finally, in response to plaintiff's alternative request that defendant be required to truthfully respond to the amended petition, defendant states:

[P]laintiff alternatively requests that defendant be required to "truthfully" answer paragraph 5(o) of Plaintiff's FIRST AMENDED PETITION. While defendant has no objection to amending its answer to this allegation in the event an accounting is necessary and its answer is determined to be incorrect, plaintiff has shown no reason why such an amendment should be required now—prior to a decision on liability. One purpose of bifurcation is to defer often-encountered disputes over the amount of procurement until after liability has been established. To amend its answer to this allegation at this time would serve no useful purpose.[2] [Footnote omitted.]

Plaintiff, in its response of November 25, concedes that the proffered exhibits would be used to argue that the commercial success that its invention has experienced is evidence of the nonobviousness of its patent.

With regard to the defendant's argument that it would be disadvantaged if the documents attached to plaintiff's motion were received into evidence, plaintiff states:

While Plaintiff's attorney has been inadvertent in not previously noticing, and offering Exhibit PX–68, 69, and 70, this does not excuse the untruthfulness of Defendant in its answer to Paragraph 5(o) of the petition.

While this is an adversary proceeding, it is submitted that one's Government has an uncomprising (yet often ignored) duty of truth to its constituents, and the Government should not be allowed to hide behind suppositions.

that the use of procurement data is relevant during the liability phase of a trial to show that the patented invention is not obvious. *See Pacific Technica Corp. v. United States*, 2 Cl.Ct. 170 (1983).

Defendant is in no way prejudiced by Plaintiff's requested supplement to the record in adding PX68, 69, and 70 or, in the alternative, giving a true answer to Paragraph 5(*o*) of the petition.

In order to enable counsel to respond to questions generated by the plaintiff's motion and to also give the parties an opportunity to submit additional arguments, a conference was held on December 14, 1983.

Counsel for plaintiff indicated that he would rely on the arguments set forth in his motion. He did, nonetheless, explain that the motion at bar was required because he had misread defendant's answer to paragraph 5(*o*), and had thought that defendant had admitted to procuring over 5,000 ACAs. Counsel for defendant, in response to the incorrectness of its answer to the allegation contained in paragraph 5(*o*) of plaintiff's amended petition, pointed out that the Air Force procurement, which is referred to in proposed Exhibit 70, was not received until February 9, 1983. Since this is after defendant's January 26, 1983, answer to plaintiff's amended petition, defendant contends that counsel, while preparing its answer, may not have been aware of the Air Force procurement. Counsel for defendant also indicated that he was unaware of any duty or responsibility to correct an incorrect answer to a pleading after the true facts became known.

### Discussion

■ Plaintiff's motion brings into focus on the one hand the serious concern of the court that answers and responses by the parties to pleadings, discovery and pretrial orders be accurate and reliable, and, on the other hand, the court's additional concern that the parties be held accountable for their answers so that a case can be prosecuted in an expeditious and orderly fashion. There is little doubt that plaintiff seeks to belatedly move the exhibits into evidence to establish the commercial success of its invention. This is so even though commercial success was not identified in plaintiff's answer to the court's standard pretrial order on liability as a material matter of fact as to which it believed the parties were in agreement or as an issue that it intended to establish at trial. Perhaps in recognition of this deficiency plaintiff raises the "untruthfulness" of defendant's answer to its interrogatories as the basis for this motion. The two are unrelated. Defendant's alleged "untruthfulness" has nothing to do with plaintiff's responsibility to adequately and completely identify the matters as to which the parties are in agreement, the issues dividing the parties, and the documents it intends to rely upon at trial in response to the court's pretrial order.[3]

Defendant, on the other hand, in order to shift the focus from its obligation to accurately and fairly answer all allegations in plaintiff's amended petition, concentrates on plaintiff's failure to identify "commercial success" as an issue or a nonissue in its pretrial statement and the disadvantage which would result if the court should accept plaintiff's exhibits at this late date.[4]

Defendant's contention, in opposition to plaintiff's motion, that it was prevented from soliciting testimony that would be useful in rebutting plaintiff's commercial success can be quickly disposed of. As the

---

3. The arguments are unrelated even if plaintiff is arguing that had defendant admitted allegation 5(*o*), it would not have had to indicate that it intended to rely on commercial success in responding to the court's standard pretrial order on liability. Plaintiff's position would be incorrect since it ignores plaintiff's duty to identify the procurement as a material fact on which the parties were in agreement.

4. Plaintiff has cited no cases which indicate that defendant has an obligation to amend an answer to a pleading after it has learned that its previous answer was incorrect. It, how-ever, seems incredible that the FRCP, or our own rules, would require such an amendment if the incorrect response had been made to an interrogatory but not to an answer to a pleading. *See* RUSCC 26(c)(2). Also relevant to this issue is RUSCC 11, which states in pertinent part: "The signature of an attorney constitutes a certificate by him that he has read the pleading or other paper; that to the best of his knowledge, information, and belief there is good ground to support it; * * *. For a willful violation of this rule an attorney may be subjected to appropriate disciplinary action."

transcript attached to defendant's opposition indicates, defendant did not indicate that the testimony would be useful to rebut plaintiff's commercial success allegation.[5] In fact, when asked why the testimony at issue was relevant to any of the matters before the court, defendant merely stated that the testimony was necessary to explain "how the patented structure performed and * * * the amount of wires that were required for that [the patented structure] as well as the performance of the Systron-Donner indicator and how many wires were required for that."

Defendant's argument that its answer to plaintiff's amended petition would be accurate if "procured" were interpreted to mean "ordered" rather than "delivered" is disingenuous. This court has on a number of different occasions clearly indicated that the delivery date of devices to the government is the controlling fact. A good example is *Tektronix, Inc. v. United States,* 216 Ct.Cl. 144, 152–53, 575 F.2d 832, 837 (1978), where the court stated:

Plaintiff, however, attempts to derive support for the trial judge's approach from our statement in *Pitcairn [v. United States],* supra, 212 Ct.Cl. [168] at 181, 547 F.2d [1106] at 1115, that a taking occurs when the Government procures or uses infringing items. Plaintiff understands the word "procure" to refer to the time when the contract is executed. But we understand the word procure to have its usual meaning. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1965) defines "procure" to mean: "1a(1): to get possession of: obtain, acquire." Such a reading of "procure" is necessary because this meaning alone can comport with our decisions concerning the statute of limitations in patent cases. *See Coakwell [v. United States],* supra [178 Ct.Cl. 654, 372 F.2d 508]; *Irving Air Chute Co. v. United States,* 117 Ct.Cl. 799, 93 F.Supp. 633 (1950). Should the cause of action for patent infringement arise at the time of contract execution, there would be uncertainty about the scope of

the interest taken by the Government. *See Irving Air Chute Co., supra.* Change orders might either avoid or exacerbate the infringement. Too, there would be a danger in some cases that the Government's infringement would go long undetected and might permit the running of the statute of limitations, since the Government's execution of a contract for infringing items might not attract the attention that delivery to the Government of those items would. A careful reading of the numerous cases in which the time of procurement is a point of focus leaves us convinced that the court is using the word in accordance with common usage and the dictionary definition quoted above. Put simply, these considerations compel the conclusion that the key dates here are the delivery dates, not the contract dates. Plaintiff admitted at oral argument that it could find no case holding that interest should accrue from the date of execution of a contract which contemplated the delivery of infringing items.

Attention is next directed to the extenuating circumstances which defendant claimed, at the conference on December 14, justified its answer to plaintiff's amended petition. Defendant's argument, that the exclusion of the Air Force procurement, since the information arrived after defendant had filed its answer and the Navy's procurement under contract (NOOO 19–69–C–0374), and since this was ordered in 1969 would bring its procurement below 5,000, is incorrect. As plaintiff proposed exhibits clearly show, the number of ACAs procured since 1970 from Syston-Donner, even excluding all of the above purchases, come to over 5,000. If the Air Force and Navy purchases are also included, it approaches 9,000.

Thus, defendant's failure to amend its answer after having learned of the Air Force procurement cannot be justified.

Finally, we turn to defendant's argument that the motion should be denied because

---

**5.** Indeed, at that time commercial success was not an issue.

plaintiff's failure to "identify these exhibits in its Pretrial Statement (and supplement thereto) prejudiced defendant by inducing it to forgo introducing testimony and exhibits relating to advantages of the Systron-Donner device over the device disclosed and claimed in the Weaver patent." This, of all defendant's arguments, is the most serious. It would be difficult to think of a better way to frustrate the purpose behind the court's pretrial order than that proposed by plaintiff's motion. The entire purpose of that order is to have all of the documents that are to be used and the issues or nonissues identified so that the parties will be prepared to proceed in an orderly and expeditious fashion. If plaintiff were permitted to submit the proposed exhibits long after trial has been completed and proofs closed, it would virtually prevent defendant from responding unless the trial and/or proofs were reopened to accommodate defendant's response. All of these problems could have been avoided if counsel for plaintiff had fulfilled the requirement of the pretrial order.

After weighing the problems associated with plaintiff's failure to reasonably alert defendant that it would rely upon commercial success as an argument for patentability, and the failure of defendant to correctly answer plaintiff's amended petition in view of the Navy's and Air Force's responses to plaintiff's interrogatories, there is no doubt that defendant will have to file an amended answer to paragraph 5(*o*). Pursuant to the discussion at the conference of December 14, defendant will be expected to immediately file its amended answer.

As also discussed, in lieu of defendant's introducing testimony or exhibits to rebut plaintiff's claim of commercial success, defendant has until December 19, 1983, to file a stipulation covering the points defendant would have proven if proof were reopened. In the event that a stipulation cannot be reached by December 19, 1983, counsel are to notify the court, by way of a conference call, no later than December 19, 1983, and explain why a stipulation cannot be filed.

Lastly, as agreed at the conference, counsel can file a motion for an enlargement of time to extend the due dates of any posttrial papers that are currently scheduled in order to accommodate the above developments.

