KASHIWA, Circuit Judge.
 

 This is an appeal from a judgment of the United States Claims Court, 1 Cl.Ct. 131 (No. 38-79), entered February 4,1983. The judgment is on the accounting phase of a similarly-captioned case
 
 (Motorola, Inc. v. United States,
 
 229 Ct.Cl. 482 (1981),
 
 affirming and adopting Motorola, Inc. v. United States,
 
 209 USPQ 769 (Ct.Cl.Tr.Div.1980)) that decided appellee’s liability. In a published opinion, 1 Cl.Ct. 131, the Claims Court, in granting appellee’s motion for summary judgment, held that 35 U.S.C. § 287 is incorporated within 28 U.S.C. § 1498 and thereby bars appellant’s recovery from the United States. We reverse and remand.
 

 Prior Decision
 

 Appellee, the United States, through its agent, the U.S. Marine Corps, infringed claims 1, 5, and 15 of appellant’s U.S. Patent No. 3,383,680 issued to appellant’s assignor, Liscum Diven (the “Diven” or “’680” patent). The claimed invention re
 
 *767
 
 lates to an improved radar transponder (radar beacon) that is capable of communicating with a plurality of radar transmitters such that the operators of the transmitters are able to locate, identify, and distinguish the carrier of the transponder. The carrier may be aircraft, vessels, vehicles, or humans. The Court of Claims held that the claims at issue were valid and that the Marine Corps’ AN/PPN-18 transponders infringed claims 1, 5, and 15. The appellant, therefore, is entitled to recover reasonable and entire compensation from the appellee pursuant to 28 U.S.C. § 1498.
 

 Background
 

 The appellant, Motorola, manufactured and sold to the Marine Corps 30 units of the patented radar beacons in early 1969. These units were commercial models of the patented beacons and designated as SST-122KU. None of the 30 units were marked with notice of Motorola’s patent rights.
 

 Later in 1969, the Marine Corps decided to procure 112 additional radar beacons and a request for proposals was published, seeking offers to supply such beacons. In its 22-page response to the request for proposals and under the heading, Performance, Motorola stated:
 

 3.5 PERFORMANCE (3.6)
 

 3.5.1
 
 Electrical Characteristics
 
 (3.6.1)
 

 3.5.1.1 Transponder (3.6.1.3)
 

 3.5.1.1.1
 
 Response
 
 (3.6.1.3.1) — The transponder will provide the commutated apparent double or triple pulse replies shown in Table I, as determined by the setting of the code control switch (see 3.2.1.1 above). The proposed coding technique allows the use of only one modulator, and provides airborne moving target indication with six identification codes.
 

 The commutating modulator that will provide the coding shown in Table I is a Motorola patented approach (United States Patent # 3,383,680 dated May 14, 1969, Liscum Diven, assignor to Motorola, Inc.) that will be supplied to the Marine Corps at no added cost. This approach allows a single modulator to be used as is specified in the HQPD 69-3 requirement paragraph 3.6.1.3.2. This patented modulator approach was used in the SST-133KU radar transponder and has demonstrated an outstanding capability for airborne moving target indication during actual field applications.
 

 The contract was awarded to another manufacturer, Vega Precision Laboratories, Inc. (“Vega”). Between late 1969 and 1970, Vega delivered all 112 radar beacons, designated AN/PPN-18.
 

 In December, 1975, the Marine Corps tendered a second request for proposals seeking additional AN/PPN-18 radar beacons. In its letter dated February 25,1976, Motorola asserted that the AN/PPN-18 radar beacons described in the December, 1975 request infringed its Diven patent. Motorola filed a formal administrative claim of patent infringement with the Department of the Navy on April 20, 1976. Through an undated letter, received by Motorola on January 3, 1979, the Navy denied Motorola’s claim of infringement. Motorola filed suit in the Court of Claims on January 31, 1979.
 

 Claims Court Proceeding
 

 In granting appellee’s motion for summary judgment, the Claims Court held that 35 U.S.C. § 287
 
 [1]
 
 is incorporated into 28 U.S.C.
 
 *768
 
 § 1498.
 
 [2]
 
 In addition, it held that Motorola’s alleged notice of infringement, in its response to the 1969 request for proposals, failed to specifically notify the appellee of the prospective infringement, thereby barring the appellant from any recovery.
 

 OPINION
 

 This is a 28 U.S.C. § 1498 action, and as such, the patent owner is seeking to recover just compensation for the Government’s unauthorized taking and use of his invention. The theoretical basis for his recovery is the doctrine of eminent domain.
 
 Crozier v. Fried Krupp Aktiengesellschaft,
 
 224 U.S. 290, 32 S.Ct. 488, 56 L.Ed. 771 (1912);
 
 Irving Air Chute Co. v. United States,
 
 93 F.Supp. 633, 635, 87 USPQ 246, 248 (Ct.Cl.1950). In this context, the United States is not in the position of an ordinary infringer,
 
 United States v. Berdan Fire-Arms Manufacturing Co.,
 
 156 U.S. 552, 565-66, 15 S.Ct. 420, 423-24, 39 L.Ed. 530 (1895);
 
 Carter-Wallace, Inc. v. United States,
 
 449 F.2d 1374, 1390, 171 USPQ 359, 370 (Ct.Cl.1971) (Nichols, J., concurring), but rather a compulsory, nonexclusive licensee.
 
 Crozier, supra; Irving Air Chute, supra.
 

 As occurs frequently in section 1498 patent actions, the parties in the instant appeal are presenting and arguing the case as if it were an action brought under Title 35. Although concepts, phrases and words commonly used in the patent field may connote or denote a panoply of rights and remedies under Title 35, the same concepts, phrases and words do not and cannot always connote or denote the same meaning under section 1498. Although a section 1498 action may be similar to a Title 35 action, it is nonetheless only parallel and not identical.
 
 Calhoun v. United States,
 
 453 F.2d 1385, 1391, 172 USPQ 438, 443 (Ct.Cl.1972).
 
 [3]
 

 35 U.S.C. § 287 advises a patent owner to mark his patented article with a notice of his patent rights. Failure to do so limits his recovery of damages to the period after the infringer receives notice of the infringement.
 
 Wine Railway Appliance Co. v. Enterprise Railway Equipment Co.,
 
 297 U.S. 387, 395-97, 56 S.Ct. 528, 530-31, 80 L.Ed. 736 (1936);
 
 Olsson v. United States,
 
 72 Ct.Cl. 72, 103-5, 9 USPQ 111 and 11 USPQ 13, 13-14 (1931). The appellee argues and the lower court held that 28
 
 *769
 
 U.S.C. § 1498 incorporates section 287 as a defense for the Government. The lower court stated:
 

 The Revisor’s Notes appended to § 1498 stated that “[i]n absence of a statutory restriction,
 
 any defense
 
 available to a private party is equally available to the United States.” * * * [Sjince section 287 is a limitation on the recovery of damages for patent infringement and thus, similar in effect to a defense, incorporating section 287 into 28 U.S.C. § 1498 appears to be within the spirit of the Revisor’s Notes. [Emphasis in original.]
 

 In addition, the appellee argues that at the time section 4900 of the Revised Statutes,
 
 [4]
 
 the predecessor of section 287, was enacted in 1910, failure to mark was treated as a defense. It cites
 
 United States Printing Co. v. American Playing-Card Co.,
 
 70 F. 50, 53-54 (C.C.W.D.Mich.1895);
 
 Sessions v. Romadka,
 
 21 F. 124, 133 (C.C. E.D.Wis.1884),
 
 rev’d in part on other grounds,
 
 145 U.S. 29, 12 S.Ct. 799, 36 L.Ed. 609 (1892) for this proposition. We disagree.
 

 I
 

 The lower court based its holding on its interpretation of the Reviser’s Note to section 1498. The Reviser’s Note, in pertinent part, states:
 

 Based on section 68 of Title 35 U.S.C., 1940 ed., Patents (June 25, 1910, c. 423, 36 Stat. 851 * * *).
 

 Provisions contained in the second proviso of said section 68, relating to right of the United States to any general or special defense available to defendants in patent infringement suits, were omitted as unnecessary. In the absence of statutory restriction, any defense available to a private party is equally available to the United States.
 

 Changes in phraseology were made. 28 U.S.C.A. § 1498, p. 467 (1973).
 

 This reference to the availability of general and special defenses for the Government was in the texts of predecessor statutes of section 1498. The original statute, enacted on June 25, 1910, ch. 423, 36 Stat. 851 (the “1910 statute” or “1910 Act”), includes the following proviso:
 
 [5]
 

 Provided further,
 
 That in any such suit the United States may avail itself of any and all defenses, general or special, which might be pleaded by a defendant in an action for infringement, as set forth in Title Sixty of the Revised Statutes, or otherwise: [Emphasis in original.]
 

 Appellee contends that this proviso is an indication that the marking and notice statute (section 4900), allegedly a defense at the time the 1910 statute was enacted, was incorporated into the 1910 statute. We disagree.
 

 Contrary to appellee’s contention and lower court’s interpretation, we construe section 1498 as not incorporating section 287. Since an interpretation of section 1498 requires an analysis of the 1910 Act and the predecessor of section 287, we shall first examine whether section 4900 was one of the defenses contemplated in the 1910 Act. Section 4900, the marking and notice statute in 1910, on its face contradicts the appellee’s contention.
 
 Hamilton v. Rathbone,
 
 175 U.S. 414, 419, 20 S.Ct. 155, 157, 44 L.Ed. 219 (1899). It was
 
 not
 
 a statutory
 
 defense
 
 to an action for infringement; it was a limitation on damages. Section 4900 was clearly a limitation on damages since it stated that “no
 
 damages
 
 shall be recovered by the plaintiff * * *.” (Emphasis added.)
 
 Dunlap v. Schofield,
 
 152 U.S. 244, 247, 14 S.Ct. 576, 577, 38 L.Ed. 426 (1894). The Court of Claims, in
 
 Richmond Screw Anchor Co. v. United States,
 
 58 Ct.Cl. 433, 440 (1923),
 
 rev’d on other grounds,
 
 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303 (1928),
 
 *770
 
 also interpreted section 4900 as a limitation on the quantum of damages and not as a substantive patent defense.
 

 Another indication that the marking and notice statute was never thought of as a defense is the subsequent addition of the title “limitation on damages” to its successor, 35 U.S.C. § 287. Since the text of section 4900 was not changed when codified, the addition of the title supports this interpretation.
 
 Brotherhood of Railroad Trainmen v. Baltimore & Ohio Railroad Co.,
 
 331 U.S. 519, 529, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646 (1947);
 
 Motor Coach Industries, Inc. v. United States,
 
 536 F.2d 930, 936 (Ct.Cl.1976) (“[W]hile titles or headings ‘cannot limit the plain meaning of the text,’ they are to be considered in resolving ambiguity”).
 

 Moreover, the marking and notice statute cannot be interpreted as a patent defense since it was already recognized as a requirement separate and apart from the patent defenses at the time the 1910 statute was enacted. The patent defenses were enumerated in other sections of the Revised Statutes, distinct from the marking and notice statute. See,
 
 infra.
 
 Similar to the addition of a title to the marking and notice statute, the successor of the patent defense statutes, 35 U.S.C. § 282, is entitled “defenses.”
 
 [6]
 

 As for appellee’s contention that section 4900 was treated by the courts as a defense, citing
 
 American Playing-Card
 
 and
 
 Sessions,
 
 we believe otherwise. At the time of the passage of the 1910 Act, courts viewed section 4900 as a burden of pleading and a burden of proof provision. The patent owner-plaintiff must plead before trial and then show at trial that he had complied with the requirements of the statute. In
 
 Dunlap,
 
 152 U.S. at 247-48, 14 S.Ct. at 577, the Court stated:
 

 One of these two things, marking the articles, or notice to the infringers, is made by the statute a prerequisite to the patentee’s right to recover damages against them [the infringers]. Each is an affirmative fact, and is something to be done by him. Whether his patented articles have been duly marked or not is a matter peculiarly within his knowledge; and if they are not duly marked, the statute expressly puts upon him the burden of proving the notice to the infringers, before he can charge them in damages. * * * [Therefore, the duty of alleging, and the burden of proving, either of these facts is upon the plaintiff [patentee].
 

 See Olsson,
 
 72 Ct.Cl. at 103-4, 11 USPQ at 13.
 
 See also Horvath v. McCord Radiator & Manufacturing Co.,
 
 100 F.2d 326, 337, 40 USPQ 394, 404 (6th Cir.1938),
 
 cert. denied,
 
 308 U.S. 581, 60 S.Ct. 101, 84 L.Ed. 486 (1939);
 
 Pairpoint Manufacturing Co. v. Eldridge Co.,
 
 71 F. 307, 309 (C.C.D.Conn.1896).
 
 [7]
 
 Since we must recognize that the Congress was fully aware of judicial constructions of a prior statute during the enactment of subsequent legislation encompassing that prior statute, our interpretation of the subsequent legislation must include the prior judicial constructions unless they were explicitly revoked by Congress.
 
 Blake v. McKim,
 
 103 U.S. 336, 339, 26 L.Ed. 563 (1881). In the instant case, we must assume that the Congress was fully aware that section 4900 had been construed as a burden of pleading and a burden of proof provision when it enacted the 1910
 
 *771
 
 statute. Thus, section 4900 cannot be viewed as a defense in 1910 and, consequently, cannot be deemed to be contemplated as one of the defenses referred to in the section 1498 proviso.
 

 II
 

 In addition to an analysis of section 4900, we may also examine the statutory history of section 1498 to see whether section 4900 was incorporated into the 1910 statute. Our examination of the 1910 statute reveals two margin notes which were appended to the proviso. On page 851 of Volume 36 of the Statutes at Large, the first margin note states “Defenses allowed.” On the next page, the second margin note states “R.S. secs. 4918-4922, pp. 951, 952.” Section 4920 lists a host of defenses which are similar to the present day section 102 defenses — public use, on sale, etc. The marking and notice provisions were placed in a different statute, section 4900. Although margin notes are generally not used in interpreting statutes, they may be referred to as indicating the intention of Congress.
 
 See Mackey v. Miller,
 
 126 F. 161, 162 (9th Cir.1903) (margin note used to interpret a statute).
 
 See also Lasseter v. O’Neill,
 
 162 Ga. 826, 135 S.E. 78, 49 A.L.R. 1076 (Ga.1926);
 
 Bettencourt v. Sheehy,
 
 157 Cal. 698, 109 P. 89 (Cal.1910) (margin notes deemed to be a part of the statute by legislation). The margin note adjacent to the 1910 proviso, citing section numbers, is an indication that these numbers refer to the defenses stated in the proviso. Since one of the sections cited in the margin, section 4920, explicitly contains patent defenses, it is an indication that the defenses stated in the proviso should only be those in that section.
 

 In addition, the failure to cite section 4900 in the margin note also indicates that the Congress did not regard it as a defense. This is in light of the fact that section 4900, at the time of the enactment of the 1910 statute, was viewed not as a defense but rather a limitation on damages and a burden of pleading and proof.
 
 Dunlap, supra.
 
 Since we must assume that Congress was fully aware of the prior judicial constructions of section 4900, its failure to cite it is, therefore, an inference that Congress did not regard it as one of the patent defenses.
 
 Blake, supra.
 
 Our examination of relevant case law and statutory history leads to the conclusion that section 1498 does not incorporate the marking and notice statute, section 287.
 

 Ill
 

 Our interpretation that section 287 is not incorporated into section 1498 is further supported by government procurement policy. In the area of government procurements, it is the policy of the United States that it must award the bid to the lowest qualified bidder irrespective of the possibility or inevitability of infringing the patents of other bidders or non-bidders. The Comptroller General, in
 
 Herbert Cooper Co.,
 
 38 Comp.Gen. 276, 277 (1958),
 
 [8]
 
 stated:
 

 It must be assumed that the authorization and consent clause was included for the purpose of invoking the provisions of section 1498, Title 28, United States Code, so that, in conjunction with a bidder’s required agreement to indemnify the United States against loss, all bids would be for consideration on a common basis, whether or not the equipment which the Government desired to purchase could be produced by some of the bidders without infringing one or more existing patents.
 

 See also Chairman, AEC,
 
 46 Comp.Gen. 227 (1966);
 
 Administrator, NASA,
 
 46 Comp.Gen. 205 (1966);
 
 P. Wall Manufacturing Co.,
 
 39 Comp.Gen. 6 (1959).
 
 [9]
 

 In light of this policy, a notice to the Government would be meaningless since the contracting agency must award the contract to the lowest bidder regardless of
 
 *772
 
 any patent infringement problems. This policy, therefore, does not take into consideration a fundamental rationale supporting section 287 — supplying notice in order to prevent innocent infringement.
 
 Wine Railway,
 
 297 U.S. at 394, 56 S.Ct. at 529-30. Since the Government does not consider the question whether the device it takes by eminent domain is protected by patents or not, requiring a patent owner to mark his device or give notice pursuant to section 287 would be meaningless in this context. Accordingly, section 287 is not incorporated into section 1498 by government procurement policy.
 

 Conclusion
 

 In light of our analysis, we interpret 28 U.S.C. § 1498 as not incorporating 35 U.S.C. § 287. The statutory construction of section 1498, the statutory history of section 1498, or the government procurement policy supports this interpretation. Since the Government is not a putative infringer but is deemed a licensee, section 287 has no application in an eminent domain taking. Accordingly, we reverse the Claims Court’s judgment and remand for accounting of the just compensation owing to the appellant.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . 35 U.S.C. § 287 states:
 

 § 287. Limitation on damages; marking and notice
 

 Patentees, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation “pat.”, together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.
 

 [2]
 

 .
 
 28 U.S.C. § 1498 (1982), in pertinent part, states:
 

 § 1498. Patent and copyright cases
 

 (a) Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner’s remedy shall be by action against the United States in the United States Claims Court for the recovery of his reasonable and entire compensation for such use and manufacture.
 

 For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.
 

 [3]
 

 . There are numerous examples of where the patent statutes are inapplicable in an eminent domain context. For instance, increased damages and attorneys fees available against private infringers under 35 U.S.C. §§ 284 and 285 are not permitted in an eminent domain proceeding.
 
 Leesona Corp. v. United States,
 
 599 F.2d 958, 202 USPQ 424 (Ct.Cl.),
 
 cert. denied,
 
 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). In addition, injunctive relief under 35 U.S.C. § 283 is not available to a patent owner in a § 1498 action.
 
 Id.
 
 at 968, 202 USPQ at 434;
 
 see Belknap v. Schild,
 
 161 U.S. 10, 16 S.Ct. 443, 40 L.Ed. 599 (1896). Moreover, the Government (treated as a licensee) has a right to replace (repair) an unpatented element in a patented combination without paying additional royalty.
 
 Calhoun v. United States,
 
 453 F.2d 1385, 1391, 172 USPQ 438, 443 (Ct.Cl.1972). As a compulsory, nonexclusive licensee, the Government is treated as an
 
 Aro I (Aro Mfg. Co. v. Convertible Top Replacement Co.,
 
 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961)) voluntary licensee, and not as an
 
 Aro II (Aro Mfg. Co. v. Convertible Top Replacement Co.,
 
 377 U.S. 476, 483-85, 84 S.Ct. 1526, 1530-31, 12 L.Ed.2d 457 (1964)) private, unlicensed infringer. Further, the Government can only be sued for any direct infringement of a patent (35 U.S.C. § 271(a)), and not for inducing infringement by another (section 271(b)) or for contributory infringement (section 271(c)).
 
 Decca Ltd. v. United States,
 
 640 F.2d 1156, 1167, 209 USPQ 52, 60 (Ct.Cl.1980), ce
 
 rt. denied,
 
 454 U.S. 819, 102 S.Ct. 99, 70 L.Ed.2d 89 (1981).
 

 [4]
 

 . Section 4900 differed from its successor in that it provided that a patentee "shall” give notice by marking rather than the permissive “may” in section 287.
 

 [5]
 

 . The proviso in the original statute was codified in 35 U.S.C. §.68 (1940), which was subsequently removed from Title 35 and re-codified as 28 U.S.C. § 1498 in 1948.
 

 [6]
 

 . 35 U.S.C. § 282, in pertinent part, states:
 

 The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:
 

 (1) Noninfringement, absence of liability for infringement, or unenforceability,
 

 (2) Invalidity of the patent or any claim in suit on any ground specified in part II of this title as a condition for patentability,
 

 (3) Invalidity of the patent or any claim in suit for failure to comply with any requirement of section 112 or 251 of this title,
 

 (4) Any other fact or act made a defense by this title.
 

 [7]
 

 .
 
 See generally Underwood Typewriter Co. v. Elliott-Fisher Co.,
 
 171 F. 116 (C.C.S.D.N.Y.1909);
 
 Lorain Steel Co. v. New York Switch & Crossing Co.,
 
 153 F. 205, 207-8 (C.C.D.N.J.1907);
 
 Sprague v. Bramhall-Deane Co.,
 
 133 F. 738 (C.C.S.D.N.Y.1904);
 
 National Co. v. Belcher,
 
 68 F. 665, 667 (C.C.E.D.Pa. 1895).
 

 [8]
 

 .
 
 Herbert Cooper
 
 was cited with approval by the Court of Claims in
 
 Rel-Reeves, Inc. v. United States,
 
 534 F.2d 274, 298, 186 USPQ 21, 40-41 (1976).
 

 [9]
 

 .
 
 See generally
 
 Mossinghoff and Alnutt,
 
 Patent Infringement in Government Procurement: A Remedy Without A Right?,
 
 42 Notre Dame Law. 5 (1966).