PLAGER, Senior Circuit Judge,
dissenting.
There are two separate though related issues in this case, both matters of first impression. One is of major significance to our understanding of the constitutional obligations of the United States (“United States” or “Government”); both relate as well to important rights of patent owners.[1] The first issue is, may an owner of a United States patent bring a cause of action under the Fifth Amendment to the Constitution[2] against the United States for a ‘taking’ as all other owners of proper *1371 ty rights may; or is a patent right somehow less of a property interest, not worthy of such constitutional protection? Until this case, this issue has never been addressed directly by this or any other court.
The second issue, dealing with a cause of action for infringement of a United States patent, is raised in the context of a method or process patent claim involving multiple steps. When an owner of such a patent sues the United States for infringement under the provisions of 28 U.S.C. § 1498, the statute that authorizes such suits against the Government, does the fact that some or all of the steps are performed in a foreign country preclude recovery? If so, is this because of some inherent limitation in § 1498(a), or is it because of the express statutory exception in § 1498(c) for a claim “arising in a foreign country”? (The relevant statutory language is set out in the footnote below.[3]) This is not only a new question of statutory interpretation, but because of the way the Supreme Court and this court have understood § 1498, there are significant constitutional overtones as well.
I. Introduction
Plaintiff invented and patented a process for manufacturing a carbon fiber sheet product, a product that is used in making military aircraft with a low radar signature, the so-called ‘stealth’ aircraft. Defendant, the United States, so plaintiff alleges, caused the use of plaintiffs patented invention in the course of having a new fighter plane, the F22, built, and, according to plaintiff, did it without permission and in violation of plaintiffs rights. For this plaintiff seeks damages.
In the trial court, the United States argued that, on the undisputed facts, plaintiff did not have a cause of action against the Government under either the statutes of the United States or under the Constitution. The argument before the trial court, and again on appeal, largely focused on 28 U.S.C. § 1498. That statute grants an owner of a United States patent the right to damages if the patented invention is used or manufactured by or for the United States without license or lawful right, and, if it applies, it is understood that the statute both waives the sovereign’s immunity and gives the Court of Federal Claims jurisdiction to hear the cause.
The trial court concluded that, because of the limitations imposed by § 1498(c), plaintiff on the facts of this case could not state a claim for relief for patent infringement, and so granted the Government partial summary judgment on that issue. On the other hand, the trial court concluded that plaintiff does have a cause of action under the Fifth Amendment to the Constitution for a ‘taking’ of its patent rights by the Government, a cause of action separate and distinct from the infringement claim.[4] The trial court denied the Government *1372 summary judgment on that issue. We accepted interlocutory appeal on both rulings.
Although my panel colleagues cannot agree why, they do agree that (1) an owner of a United States patent can be denied the basic protections of the Constitution, and that (2) if any one step of a multi-step patented process occurs outside the United States, the Government is immune from liability under § 1498 for its infringement of the patent. They are wrong on both propositions. I would uphold the trial court’s conclusion that the taking claim states a cause of action entitling plaintiff to a full trial of the issue, and reverse the trial court’s erroneous conclusion regarding § 1498. Since this is the exact opposite of what my colleagues are ruling, I respectfully dissent.
II. Overview
As there are three other opinions in this case, I begin by summarizing the problems I have with my colleagues’ collective and separate views. First, in their per curiam opinion, my colleagues’ analysis of the § 1498 liability issue consists of one brief paragraph that concludes, “where, as here, not all steps of a patented process have been performed in the United States, government liability does not exist pursuant to section 1498(a).” Per curiam op. at 1350. They base this conclusion on the erroneous assumption that a cause of action for infringement of a patent by the United States under § 1498 is governed by the limitations of 35 U.S.C. § 271(a), the statute that defines infringement among private litigants, and not by the express terms of 28 U.S.C. § 1498(a), the exclusive statute that defines the Government’s liability in similar circumstances.
In his concurring opinion, Judge Gajarsa acknowledges the problem with trying to incorporate the terms of § 271(a) into § 1498(a), but he has been persuaded that we are bound by brief language on the subject found in this court’s NTP opinion, decided last year, suggesting that incorporation is established law. Though he believes NTP is wrong on this point, Judge Gajarsa nevertheless feels bound. Judge Dyk, on the other hand, in his concurring opinion argues that the comment in NTP is or should be controlling law.
Because of the way the majority in their per curiam opinion resolve the issues in this case, applying the magical incorporation doctrine to § 1498(a), the trial court’s decision that plaintiff’s infringement claim is barred by the express terms of subsection (c) dealing with causes that “arise in a foreign country”—the issue that was certified to us—is not addressed at all in the per curiam opinion, nor by Judge Dyk in his concurrence. Judge Gajarsa, however, does address it in his concurring opinion, see Gajarsa concurring op. at *1373 1360-1366, even though, on his view of the statute as stated in the per curiam opinion, subsection (c) has no bearing on the outcome.
Since I do not dispose of plaintiffs infringement claim by rewriting § 1498(a) as the majority chooses to do, I must address the subsection (c) exception. In part IV of this opinion I will explain both why the majority’s incorporation assumption has no basis in law, and why the assumed ‘binding effect’ of the NTP precedent is neither binding nor precedent. I will then explain that, at least with regard to the Tyranno process, the subsection (c) exception does not apply here. And finally I will comment on why the majority’s view of the limitations imposed by § 1498 raises significant constitutional concerns.
Second, regarding the takings issue, the per curiam opinion does provide somewhat more analysis, but the analysis is on the wrong subject. According to the per curiam opinion, the takings issue in this case turns on the meaning of an 1894 Supreme Court case, Schillinger v. United States, 155 U.S. 163, 30 Ct.Cl. 480, 15 S.Ct. 85, 39 L.Ed. 108 (1894). The meaning of Schillinger is then stated in the opinion in one summary sentence, without reference to the facts of the case or the Supreme Court’s actual holding. The remainder of the per curiam takings discussion goes off into a lengthy discourse about why other cases decided some years later did not sub silentio overrule Schillinger. Interesting, but irrelevant. The key is Schillinger. As I shall explain next, Schillinger does not stand for what the per curiam opinion tells us it does, and thus the majority’s conclusion based on their reading of it is wrong. (The concurrences add little to the takings discussion, but where relevant will be addressed below.)
III. The Fifth Amendment Taking Issue
The Fifth Amendment to the Constitution provides a series of protections for the individual against governmental abuses, and concludes: “nor shall private property be taken for public use, without just compensation.” This provision has a long and noble history of protecting and preserving property rights against unfettered Governmental seizure, and in so doing of protecting individual freedom and personal integrity from undue government authority.[5]
It is well understood that this constitutional provision does not preclude the Government from taking private property for public use. Rather, the Constitution guarantees that the citizen will be fully compensated for such a taking. By requiring just compensation the Constitution makes the property owner whole, and it also places a constraint on government action by imposing the cost of such action on the Government’s fisc, thus subjecting administrative action to the discipline of public decision-making and legislative authorization. In recent years the Supreme Court has extended the salutary protection of the Fifth Amendment to excessive governmen *1374 tal regulation—the ‘regulatory taking’ issue [6]—in addition to the traditional takings area in which the government actually acquires private property interests for its own use—the ‘physical taking’ issue.
In the case before us, the matter falls into the traditional acquisition area. Plaintiff alleges that the Government took its property—its government-granted patent right—when the Government’s subcontractors used the patented method in the production of certain products employed in the F-22 production.[7] On its face, the claim seems straightforward. Property rights are created by law. In the ordinary course, the law is state law. In the case of patents, the law is federal, and the patent statute expressly declares that the rights in an issued patent are property. 35 U.S.C. § 261 (“[P]atents shall have the attributes of personal property.”); see also Consolidated Fruit-Jar Co. v. Wright, 94 U.S. 92, 96, 24 L.Ed. 68 (1876) (“A patent for an invention is as much property as a patent for land.”).
One of the property attributes of a patent grant is the right to exclude all others, including the Government, from “making, using, offering for sale, or selling” the patented invention without the patentee’s consent. 35 U.S.C. § 154(a)(1); see Carl Schenck, A.G. v. Nortron Corp., 713 F.2d 782, 786 n. 3 (Fed.Cir.1983) (“The patent right is but the right to exclude others, the very definition of ‘property.’ ”). When a private party uses without authority an invention subject to patent rights, the wrongful use is the tort of infringement. The patentee’s judicial remedy is a suit for infringement in accordance with Title 35, United States Code. See 35 U.S.C. §§ 271, 281. However, when the wrongful use is committed by the United States Government (or its agents), such suit is not brought under Title 35 but under Title 28, section 1498. (The judicial remedy provided by 28 U.S.C. § 1498 will be discussed in Part IV, below.)
Nevertheless, when the Government chooses to acquire a patent right without prior permission of the owner, there is a way, unrelated to infringement law and unique to the Government, through which a patentee’s right to exclude others may be obtained. The Government can exercise its power of eminent domain and simply seize or, as we say, ‘take’ the property it needs for a public use. In effect, the Government forcibly acquires a license to use the invention. However, because of the Constitution, the Government may do this only if it pays the just compensation demanded by the Fifth Amendment. The trial court examined the question of whether there could be such a taking independent of the terms of § 1498. The court concluded, correctly, that the answer is yes, and that the Court of Federal Claims has jurisdiction under the Tucker Act to entertain that claim. The Government’s challenge to that conclusion is the first question certified to this court. See Zoltek *1375 Corp. v. United States, No. 96-166 C (Fed.Cl. Feb. 20, 2004) (order).
On appeal, the panel majority in its per curiam opinion disagrees with the trial court. The opinion relies on its understanding of the Schillinger case, in which, according to the per curiam opinion, “the Supreme Court rejected an argument that a patentee could sue the government for patent infringement as a Fifth Amendment taking under the Tucker Act,” per curiam op. at 1350, and, we are told, Schillinger remains good law. That statement is essentially the entire explanation offered for the opinion’s slavish reliance on Schilling-er.
The problem with the majority’s statement of Schillinger is that it misconstrues the holding in Schillinger, and equates the taking claim with an infringement action, when as a matter of law these are two separate legal claims founded on separate legal bases. The tort of patent infringement is statutorily based and defined, and exists at the discretion of Congress; the right to just compensation for a taking is constitutional, it is not a tort, and it requires no legislative blessing. Furthermore, Schillinger, on which the majority bases its result, was not a taking case at all.
Schillinger filed a petition in the Court of Claims for damages for alleged unauthorized use of his patent by the Government. At the time (1894), it was understood that the jurisdiction of the Court of Claims for suits against the United States lay in contract, but not in tort. The Court of Claims held that since Schillinger’s suit did not involve a contract, either expressed or implied, on the part of the Government for the use of the patent, the petition was outside of the jurisdiction of that court. The Supreme Court agreed.
The Supreme Court said “[t]hat this action is one sounding in tort is clear.” 155 U.S. at 169,15 S.Ct. 85. The Court opined that the Court of Claims has no jurisdiction of claims against the Government for mere torts. “Some element of contractual liability must lie at the foundation of every action.” Id. at 167, 15 S.Ct. 85. The Court restated “the frequent ruling of this court that cases sounding in tort are not cognizable in the court of claims.” Id. at 169, 15 S.Ct. 85. Since the cause of action was for tort, and not contract, the Court affirmed the trial court’s dismissal of the suit.
In dissent, Justice Harlan first asked the question, “Can a suit be maintained against the United States in the court of claims, as upon contract, for the reasonable value of such use of the patentee’s improvement?” Id. at 173, 15 S.Ct. 85 (Harlan, J., dissenting). He argued that the constitutional provision for just compensation placed an implied contractual duty on the Government to pay for what it used, and that plaintiff could waive the tort and sue on the contract.
He further noted that “[tjhere is another view of the case which is independent of mere contract.” Id. at 179, 15 S.Ct. 85 (Harlan, J., dissenting). The newly enacted Tucker Act of 1887 for the first time gave the Court of Claims jurisdiction to hear and determine “all claims founded upon the constitution of the United States.”[8] Justice Harlan observed that “[i]f the claim here made to be compensated for the use of a patented invention is not founded upon the constitution of the United States, it would be difficult to *1376 imagine one that would be of that character.” Id. (Harlan, J., dissenting). But the Court majority gave scant attention to this argument; it dismissed it with the back of its hand, stating summarily that such a broad reading could be applied to every other provision of the Constitution as well as to every law of Congress.
What is critical to appreciate is that when Schillinger was decided in 1894, the judicial treatment of the then-new Tucker Act provision cited by Justice Harlan was still in its early stages of development. It was not until some years later, and the Supreme Court’s decision in Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933), that the identity of a separate, non-statutory, constitutional basis for takings remedies under the Fifth Amendment emerged. Along with that understanding came the understanding that the opening clause of the Tucker Act provides the Court of Claims (now the Court of Federal Claims) with a separate jurisdictional basis for such actions, separate from its other bases.
In Jacobs the Supreme Court left no doubt that a constitutional ‘taking’ claim was not simply another version of the typical Tucker Act suit against the Government. The narrow issue before the Court was whether plaintiff, whose Fifth Amendment taking claim against the Government for flooding of its land had already been adjudicated in its favor, was entitled to interest on its award. If the taking suit against the Government was limited to traditional statutory remedies, the answer was no, as no statutory provision for interest had been provided. The Court of Appeals had so held. The Supreme Court reversed, and awarded interest, stating that claims for just compensation are grounded in the Constitution itself:
The suits were based on the right to recover just compensation for property taken by the United States for public use in the exercise of its power of eminent domain. That right was guaranteed by the Constitution. The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. The form of the remedy did not qualify the right. It rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was implied because of the duty to pay imposed by the amendment. The suits were thus founded upon the Constitution of the United States.
Id. at 16, 54 S.Ct. 26 (emphasis added).
That has been the law at least since 1933. Today a cause of action under the Fifth Amendment’s taking clause is understood to be neither a tort claim nor a contract claim, but a separate cause arising out of the self-executing language of the Fifth Amendment. As the Supreme Court recently explained in First English Evangelical Lutheran Church of Glendale v. County of Los Angeles:
[Gjovernment action that works a taking of property rights necessarily implicates the “constitutional obligation to pay just compensation.” We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of “ ‘the self-executing character of the constitutional provision with respect to compensation.’ ” ... Jacobs, moreover, does not stand alone, for the Court has frequently repeated the view that, in the event of a taking, the compensation remedy is required by the Constitution.
*1377 482 U.S. 304, 315-16, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987) (citations omitted) (emphasis added).
Furthermore, there is no longer any question that the opening clause of the amended Tucker Act covering “all claims founded upon the constitution of the United States” provides the Court of Federal Claims with jurisdiction over such claims. How else could Fifth Amendment actions be brought today in the Court of Federal Claims for inverse condemnation, see, e.g., Hendler v. United States, 952 F.2d 1364 (Fed.Cir.1991), or for regulatory takings, see, e.g., Fla. Rock Indus., Inc. v. United States, 18 F.3d 1560 (Fed.Cir.1994)?
In the case of inverse condemnation takings, such as is the case here, the Government has not used its eminent domain power affirmatively, but is alleged by a plaintiff to have committed by Government action a taking of private property without the just compensation required by the Fifth Amendment. If these cases are considered to be based on tort, the Court of Federal Claims would be without jurisdiction as it remains well established that that court has no general tort jurisdiction. And, as in regulatory takings cases as well, there is no element of contractual or consensual understanding between the owner whose property is taken and the Government that takes it. If traditional contract-based jurisdiction were required under the Tucker Act, the Court of Federal Claims would be without jurisdiction because there is no contract. Nevertheless, for the reasons explained by the Supreme Court in First English, the Court of Federal Claims today under the Tucker Act hears and decides both inverse condemnation and regulatory takings cases, and we review them on appeal. Whatever relevance the argument in Schillinger may have had to constitutional takings back in 1894 regarding contract and tort jurisdiction in the Court of Claims, it has none now.[9]
In the case before us, in response to the trial court’s instructions plaintiff amended its pleading to make clear that its Fifth Amendment takings claim was separate and distinct from the statutory infringement claim. It is established law that the Constitution creates its own remedy, and the Tucker Act expressly gives jurisdiction over such constitutional claims to the Court of Federal Claims. Plaintiff has alleged a property interest in its patent, and a taking of that interest by the United States. As the trial court correctly concluded, plaintiffs non-frivolous allegation of a constitutional taking claim comes within the jurisdiction of the Court of Federal Claims and entitles plaintiff to a trial on the merits. Summary judgment in favor of the Government as the majority dictates is wrong as a matter of law, and is a denial of plaintiffs constitutional rights.
In response to this explanation of established law, the per curiam opinion simply repeats its confusion over statutory remedy and constitutional right. The answer to the takings issue, we are told, “is simple. Unlike regulatory takings and the inverse condemnation of real property, the ‘taking’ of a license to use a patent creates a cause of action under § 1498.” Per curiam op. at 1353. Consequently, since in the major *1378 ity’s view there is no remedy on these facts under § 1498, there is no constitutional right either. The notion that the constitutional right to just compensation is defined by the terms of a statute— § 1498 in this case—is elaborated in Judge Gajarsa’s concurring opinion, in which he opines that “it is the responsibility of Congress, and of Congress alone to decide whether, and to what extent, it will permit the courts to help it fulfill its Constitutional obligations under the Takings Clause.” Gajarsa concurring op. at 1367.
This is a remarkable view of the Constitution. Can it be that Congress, by a stroke of the legislative pen, may withhold the remedies and revoke the protections given to the citizenry by the Fifth Amendment, not to mention the other Articles of the Bill of Rights to the Constitution? Fortunately no authority exists for such a radical doctrine of legislative preemption over constitutional right. Wisely, Congress has never attempted to establish one, and in fact Congress in the Tucker Act expressly provides for the courts’ jurisdiction over these takings claims. To argue that Congress in enacting § 1498 successfully cabined the Constitution is the reverse of the understanding that the Constitution trumps legislation; it hardly seems appropriate for this court to be the first to announce such a contrary view of constitutional doctrine.
Judge Dyk in his concurring opinion concludes that, since under his view of the case the Government’s conduct was non-infringing (i.e., § 1498(a) was not violated because § 271(a) was not), there was no wrong and thus no basis for a takings claim. Dyk concurring op. at 1370. As a result, we do not know Judge Dyk’s view of the takings issue directly, though by joining the per curiam opinion he presumably shares Judge Gajarsa’s view of § 1498, whatever it is understood to be, as the sole remedy for a taking of a patent right.
In my view, the existence of a proper takings claim is an issue wholly independent of whether under § 1498 there is a valid claim that triggers a remedy under that statute. The latter is a question of statutory right granted by Congress under its legislative authority pursuant to the Constitution; the former is a matter of constitutional principle the vindication of which Congress has properly provided for by remedy in the Court of Federal Claims pursuant to the provisions of the Tucker Act. The mixing and merging of these two separate legal concepts in the manner the majority has done is incorrect as a matter of law, and leads them to an erroneous conclusion.
IV. The Section 1498 Infringement issue
The second issue before us is whether plaintiff has stated a separate cause of action under 28 U.S.C. § 1498(a) for damages based on a claim of unauthorized use by the Government. The answer is yes. The per curiam opinion’s decision to the contrary is based on the proposition that there can be no Government liability under § 1498(a) unless the same conduct, if done by a private party, would constitute infringement under 35 U.S.C. § 271(a). However, that statement, blending the two disparate sections of the statutes into one, has no basis in the statutory language, nor is there binding precedent of this court in support of such a proposition.
In his concurring opinion, Judge Gajarsa acknowledges the problem with the incorporation theory, and therefore he presents *1379 an alternative argument that reaches the same result based on an interpretation of § 1498(c). For the reasons I shall explain, that interpretation of subsection (c) is not correct. Finally, I conclude this section with a comment about the constitutional concerns raised by the majority’s interpretation of § 1498.
1.
The per curiam opinion concludes that, for the Government to be liable under § 1498(a) for the unauthorized use of a patented process, each claimed step must be performed in the United States. Nothing in § 1498(a) speaks about performance in the United States; that notion is come to only by incorporating into § 1498(a) the requirement for infringement by a private party under 35 U.S.C. § 271(a): “whoever without authority ... uses ... any patented invention, within the United States ..., infringes the patent.” (Emphasis added.) Contrast that with the actual language of § 1498(a): “Whenever a [patented] invention is used ... by or for the United States ... without lawful right ..., the owner’s remedy shall be by action against the United States.” Section 1498(a) simply does not contain the same territorial limitation on infringement as § 271(a). Congress obviously knew how to write limiting language when it wanted to; its absence means that there is nothing in subsection (a) of § 1498 that requires that the infringing activity, or any part of it, take place in the United States; that is the role played by subsection (c), discussed below.
I do agree with one premise relied on by the majority—that under either § 1498(a) or § 271(a) the use of a method claim in order to infringe requires that each and every step of the claimed process be performed. There is no basis, however, for reading into § 1498(a) the requirement that each step be performed in the United States.
28 U.S.C. § 1498(a) makes no reference to 35 U.S.C. § 271(a), nor does anything in § 1498 suggest any link between actions brought under Title 28 and those brought under the authority of Title 35. Indeed, though there may be similarities between the two, our cases make it clear that the statutes in Title 35 dealing with infringement litigation between private parties have no direct application to infringement litigation against the United States under 28 U.S.C. § 1498. See Motorola, Inc. v. United States, 729 F.2d 765, 768 (Fed.Cir. 1984) (“Although a section 1498 action may be similar to a Title 35 action, it is nonetheless only parallel and not identical.”); see also Leesona Corp. v. United States, 220 Ct.Cl. 234, 599 F.2d 958, 968-69 (1979).
The per curiam opinion, rather than interpreting the relevant statutes, relies on what Judge Gajarsa refers to in his concurring opinion as the “NTP proposition,” to the effect that infringement under § 271(a) is necessary for government liability under § 1498. See NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1316 (Fed.Cir.2005). Judge Gajarsa points out that the evolution of this broad statement began with our predecessor court’s holding in Decca Ltd. v. United States, 225 Ct.Cl. 326, 640 F.2d 1156 (1980). Decca involved a suit against the Government under § 1498, and stated that under that section the Government can be liable only for direct infringement and not inducement of infringement or contributory infringement. Id. at 1167. Judge Gajarsa correctly describes how this court mischar-acterized that holding in a footnote in Motorola. See Motorola, 729 F.2d at 768 n. 3. In that case, a Claims Court decision had *1380 purported to incorporate 35 U.S.C. § 287—the patent marking statute—into § 1498 as an additional government defense. The Federal Circuit reversed, holding that incorporation was incorrect. The Motorola footnote, intended to support the no-incorporation principle by illustrating the various situations in which § 1498 differs from Title 35, at the end of the lengthy footnote managed to confuse the two in a somewhat incoherent sentence, a sentence that is at best mere dictum.
Where I part company with Judge Ga-jarsa is in the next evolutionary step, in which he concludes that the relationship between § 271(a) and § 1498(a) suddenly became binding precedent of this court in NTP. The parties in NTP were NTP, a U.S. corporation, the patent owner, and Research in Motion, a Canadian corporation, the accused infringer. The suit was under Title 35. The United States was not a party to the suit, and 28 U.S.C. § 1498 was not at issue.
In NTP, the accused system consisted of many components, one of which was a relay component located in Canada. In determining whether the accused infringer used the system “within the United States,” as required for infringement under § 271(a), this court looked for guidance to Decca Ltd. v. United States, 210 Ct.Cl. 546, 544 F.2d 1070 (1976), the facts of which were not unlike those of NTP.[10]
In Decca, the accused infringer was the Government, and the suit was under § 1498. The question was whether § 1498(c)—the subsection exempting claims arising in a foreign country—precluded Government liability when some parts of the Omega positioning system were used worldwide. The Court of Claims determined that the Government was nevertheless liable for the alleged infringing use because control and beneficial use of the system were not foreign-based. Decca, 544 F.2d at 1083. NTP simply applied the same reasoning to conclude that the presence of RIM’s relay component in Canada did not preclude a jury from finding that use of the accused system took place in the United States, as required under § 271(a).
It is not surprising that the NTP panel found the Decca decision “instructive” because of the similarity in fact patterns. The result in NTP could have been justified without any formal ‘linkmg’ of the Decca statute and the NTP statute. The precise ‘linking’ statement in NTP is: “Although Decca was decided within the context of section 1498, which raises questions of use by the United States, the question of use within the United States also was implicated because direct infringement under section 271(a) is a necessary predicate for government liability under section 1498.” NTP, 418 F.3d at 1316 (citing Motorola, 729 F.2d at 768 n. 3). Since government liability under § 1498 was not at issue in NTP, the statement is not in any sense necessary to the holding in NTP, and it is at best a passing comment about a statute not before the court. The discussion that precedes and follows the comment makes clear that the NTP court understood this. There exists no binding precedent of this court mandating that § 271(a) be incorporated into § 1498(a).
Judge Dyk in his concurring opinion argues for making the dictum in NTP con *1381 trolling law. He supports his ipse dixit by piecing together bits of language from legislative history found in the Congressional Record, language from cases on different matters, and broad conclusions about what Congress could not have meant by what it did not say. His position has no basis in the statutory language and, as Judge Ga-jarsa cogently points out, ignores the role of § 1498(c), which is the only provision addressing the § 1498 extraterritoriality issue. If § 1498(a) incorporates a “within the United States” territoriality requirement, so that the Government is liable only when its infringing act occurs in the United States, what is the purpose of § 1498(c), the 1960 amendment to § 1498 that exempted Government liability for claims arising in a foreign country? If the Government’s infringing act must take place in the United States in order for the Government to be liable under § 1498(a), then exempting Government actions that arise in a foreign country under § 1498(c) is unnecessary. It is a court’s obligation to make every part of a statute have meaning. The position advocated by Judge Dyk renders § 1498(c) meaningless.
2.
Because § 1498(a), properly understood, does not incorporate the “within the United States” requirement of § 271(a), I agree with Judge Gajarsa’s alternative view that we must look to § 1498(c) to determine how and when the Government’s liability under § 1498(a) is subject to geographical constraints. Section 1498(c) reads in its entirety: “The provisions of this section shall not apply to any claim arising in a foreign country.” At the outset it is well to remember that the word “claim” in § 1498(c) means the same as ‘claim’ in a pleading, i.e., a ‘cause of action.’ Thus we are looking for the earmarks of a cause of action, and where it arises.
As noted above, I agree with Judge Gajarsa’s answer to the first question he poses in Part II of his concurring opinion: a patented method is used within the meaning of § 1498(a) only if all steps of the claimed process are performed. Ga-jarsa concurring op. at 1858-1860. That proposition seems clear enough, and correct. It follows that in order for a cause of action to arise under § 1498(a) for use of a method patent all steps of the method must have been practiced by the alleged infringer.
The next question then is how does subsection (c) of § 1498 relate to patent infringement under subsection (a), i.e., when and how does a cause of action for patent infringement against the United States arise in a foreign country? The language of subsection (c) does not answer the question, nor is there anything in its legislative history that is particularly helpful. To resolve the issue before us we need not answer the question in its broad terms— the issue before us is a narrow one. When the use of a method patent is alleged, and we have concluded that all of the steps of the method must be performed in order for an infringement of the patent to have occurred, what are the requirements, with particular regard to territorial location, for the performance of these steps? Where must the steps be performed in order for the cause of action to arise “in a foreign country”?
Looking across the range of choices, there are three. The first and easiest case is when each and all of the steps are completed within the United States. Here there is no foreign entanglement whatsoever, so subsection (c) has no application and the Government is subject to the requirements of § 1498(a). That case is not before us, but it is useful to have it in mind *1382 as we pursue the remainder of the analysis. The second and next easiest case is when each and all of the steps are completed in a foreign country. If the prohibition in subsection (c) is to have meaning in the context of using a method patent, it must apply here. In the case before us, the Nicalon silicon carbide fibers were manufactured into sheets in Japan, the record indicating that all of the steps of the patented invention were performed there. Even though those sheets were imported into the United States and used in the Government’s fighter aircraft, summary judgment for the Government under § 1498 would be appropriate because this would constitute a “claim arising in a foreign country,” and subsection (c) affords the Government a complete defense.
The interpretive problem becomes more difficult in the third case, in which some of the steps of the method patent are practiced abroad, and some in the United States. That is the situation with the sili-cide fiber mats made from Tyranno fibers, since the Tyranno fibers are manufactured in Japan and then processed into mats in the United States, allegedly requiring use of one or more of the steps of the patented method in both places. In dealing with this fact pattern, Judge Gajarsa in his concurring opinion tells us that each, i.e., all, of the steps must be performed within the United States in order for a cause of action to avoid the arising-in-a-foreign-eountry exception. Put another way, if any one step occurs outside the United States, it is a cause of action that arises in a foreign country, and thus is barred by § 1498(c).
That cannot be the law. A cause of action does not ‘arise’ in a place just because any one step of a multi-step process patent occurs there. Beyond that, Judge Gajarsa’s position cannot be reconciled with the proposition that all steps must be completed before a compensable use, i.e., infringement of a method patent, occurs under § 1498(a).
I understand my colleague’s dilemma— there is no guidance in the statute, in the legislative history, or in prior cases as to what to make of this provision when the steps of a method patent have been performed both in and out of the country. But that is no reason to abandon logical analysis in preference for a policy-rooted and result-driven conclusion. The logic of the statute and what seems to me to be the basic policy underlying § 1498 is that when the Government has allegedly benefited from infringing conduct by its contractors or subcontractors, and when fairness decrees that the Government be held responsible for its wrongs—the fundamental principle underlying § 1498(a)—then the fact that one or another step of a process occurred outside the United States should not alone immunize the Government from liability.
This case involves patent claims utilizing numerous steps in the manufacture of a specialized high-technology material of unique interest to the Government. There is no basis in law or policy for absolving the Government from liability, now and forever, for the wrongful conduct of its agents just because any one step of a multi-step patented method can be found to have occurred outside the United States—that is an invitation to strategic conduct if ever there was one. I conclude that the Government is liable under § 1498(a) for an unauthorized use of a method patent unless all steps of the method are practiced abroad, thus causing the claim to be one “arising in a foreign country.” See § 1498(c).
*1383 3.
Finally, because the per curiam opinion and at least one of the concurring opinions devotes so much time to the cases construing § 1498, I cannot, even in the interest of brevity, ignore the offered analyses. The forerunner of § 1498, enacted in 1910, was a straightforward piece of legislation. The 1910 statute was entitled “An Act to Provide Additional Protection for Owners of Patents of the United States, and for Other Purposes,” and provided that “whenever an invention described in and covered by a patent of the United States shall hereafter be used by the United States without license of the owner thereof or lawful right to use the same, such owner may recover reasonable compensation for such use by suit in the court of claims.”[11] A straightforward reading of the statute would be that this is a waiver by Congress of the Government’s sovereign immunity from the tort of patent infringement, and authority to sue the Government for the tort in the Court of Claims.
That, however, was not the way the Supreme Court initially viewed the statute when it came before the Court two years later in the ease of Crozier v. Fried. Krupp Aktiengesellschaft, 224 U.S. 290, 32 S.Ct. 488, 56 L.Ed. 771 (1912). Plaintiff Fried. Krupp, the patentee, sought a permanent injunction against Wm. Crozier, the Chief of Ordnance of the United States Army, for unauthorized use of its patented invention regarding guns and gun carriages. The Government demurred on the grounds that the Court of Claims lacked jurisdiction over the suit.
The Supreme Court, after reviewing the history of infringement suits against the Government up to and including Schilling-er, turned to the new statute:
In substance, therefore, in this case, in view of the public nature of the subjects with which the patents in question are concerned and the undoubted authority of the United States as to such subjects to exert the power of eminent domain, the statute, looking at the substance of things, provides for the appropriation of a license to use the inventions, the appropriation thus made being sanctioned by the means of compensation for which the statute provides.
224 U.S. at 305, 32 S.Ct. 488.
Working through the prolix language, it seems that the Court chose not to read the new statute as a simple authorization for suits for the tort of patent infringement against the Government, but instead read the statute as an illustration of the Government’s obligations under the Fifth Amendment. Why the Court thought the statute was the one and not the other is not explained. Perhaps it was the longstanding rule, which the Court had only recently reiterated in Schillinger, that the Court of Claims did not have jurisdiction over torts. Perhaps it was discomfort with the permanent injunction being sought against the Army’s efforts to modernize its guns—after all Fried. Krupp was a German corporation and the drums of war, though still distant, were beating. Perhaps it was a bow to Justice Harlan’s dissent in Schillinger arguing for using the Fifth Amendment to allow a recovery, though if the statute authorized a tort action, a power Congress clearly has,[12] there would be no need for a constitutional justification. Whatever the explanation, *1384 the Court in Crozier was clear: “[W]e think there is no room for doubt that the statute makes full and adequate provision for the exercise of the power of eminent domain for which, considered in its final analysis, it was the purpose of the statute to provide.” Id. at 307, 32 S.Ct. 488.
Does it matter which of these underlying theories—tort or constitution—supports a plaintiffs suit under § 1498? In some cases, it would not seem to matter. However, despite the fact that in light of modern cases our adherence to the Crozier theory has been called “at best anachronistic and at worst misleading,”[13] in other cases the underlying theory has had an effect on the outcome; such eases continue to recite the taking theory. See, e.g., Hughes Aircraft Co. v. United States, 86 F.3d 1566, 1571 (Fed.Cir.1996) (“The government’s unlicensed use of a patented invention is properly viewed as a taking of property under the Fifth Amendment through the government’s exercise of its power of eminent domain and the patent holder’s remedy for such use is prescribed by 28 U.S.C. § 1498(a).”); Leesona, 599 F.2d at 964 (“When the government has infringed, it is deemed to have ‘taken’ the patent license under an eminent domain theory, and compensation is the just compensation required by the fifth amendment.”).
If either the majority’s incorporation theory or Judge Gajarsa’s alternative theory prevails, it will certainly matter. To the extent § 1498 is understood to incorporate into its provisions the entitlements provided by the Fifth Amendment’s ‘taking’ clause, any statutory limitation providing less than just compensation would be unconstitutional. Reading § 1498 to provide that any one step in a method, no matter how strategically planned, will insulate the Government from its own wrongdoing is hardly consonant with the purposes of the Fifth Amendment.
Judge Gajarsa responds to my concerns about the takings issue, and his merger of the constitutional requirement for just compensation with § 1498, by arguing that there is no constitutional requirement for a judicial remedy for a taking. See Gajarsa concurring op. at 1366 -1367 & nn. 13-14. He points out that Congress could choose to provide the remedy directly by legislation. Perhaps; at least so long as the constitutionally required remedy is provided, that may be true.[14] But Congress, *1385 since the creation of the Court of Claims, prefers not to spend its time writing special bills; instead, it has provided a judicial remedy for takings claims through the Tucker Act and that remedy meets the requirements of the Constitution. If the judicial remedy is limited to the provisions of § 1498, as my colleagues argue, then that section must also meet the requirements of the Constitution. The argument that Congress could satisfy the Constitution by doing it all itself on an individual basis is academically interesting, but hardly relevant.
In sum, plaintiff alleges inter alia that the Government has infringed its United States patent under the terms of United States patent law; on appeal, the issue is whether plaintiff has stated a cause of action under § 1498 for which relief could be granted. I would hold plaintiff has done that, at least with regard to the silicide fiber mats made from Tyranno fibers, and would remand the matter to the trial court for further proceedings on this issue, as well as on the constitutional taking claim.

. The term "patent owner” as used throughout this opinion includes assignees of a patent.

. "[N]or shall private property be taken for public use, without just compensation.” U.S. Const, amend. V.

. The relevant portion of 28 U.S.C. § 1498(a) reads:
Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner’s remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.
Section 1498(c) reads in its entirety: "The provisions of this section shall not apply to any claim arising in a foreign country.”

. The trial court and the majority opinion both treat the problem of the taking claim as one of establishing jurisdiction in the Court of Federal Claims. This is incorrect, since a *1372 well-pleaded complaint establishes jurisdiction; the legal issue is whether plaintiff has stated a claim for which relief can be granted. Further, with regard to the infringement issue, as the trial court explained, the Government's defense under § 1498(c) is an affirmative defense, and the pleadings clearly establish a well-pleaded complaint. Again, a more accurate description of the issue is whether plaintiff has stated a claim for which relief can be granted. See Palmer v. United States, 168 F.3d 1310, 1313 (Fed.Cir.1999) (“[A] court’s general power to adjudicate in specific areas of substantive law ... is a question of a court’s subject matter jurisdiction,” whereas "the question of whether in a specific case a court is able to exercise its general power with regard to the facts peculiar to the specific claim ... is properly addressed as a question of whether the plaintiff has stated a claim upon which relief can be granted.”).

.
[T]he only dependable foundation of personal liberty is the personal economic security of private property.... There is no surer way to give men the courage to be free than to insure them a competence upon which they can rely. Men cannot be made free by laws unless they are in fact free because no man can buy and no man can coerce them. That is why the Englishman’s belief that his home is his castle and that the king cannot enter it ... [is] the very essence of the free man’s way of life.
Walter Lippmann, The Method of Freedom 101-02 (1934).

. See, e.g., Lucas v. S.C. Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

. Section 1498 expressly makes the United States liable for the actions of its contractors and subcontractors:
For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.
28 U.S.C. § 1498(a).

. Act of March 3, 1887, 24 Stat. 505.

. Since Schillinger is not relevant to the question of whether plaintiff has a taking claim, the per curiam’s discourse regarding whether Crozier v. Fried. Krupp Aktiengesellschaft, 224 U.S. 290, 32 S.Ct. 488, 56 L.Ed. 771 (1912), decided eighteen years after Schillinger, "effectively overruled Schillinger sub silentio,” per curiam op. at 1350, is equally irrelevant to the question of whether a separate cause of action exists for a constitutional taking of a patent right.

. Note that there are two Decca decisions, one in 1976 addressing the liability phase of the case, 210 Ct.Cl. 546, 544 F.2d 1070, and one in 1980 addressing the damages phase, 225 Ct.Cl. 326, 640 F.2d 1156.

. Act of June 25, 1910, ch. 423, 36 Stat. 851.

. See Federal Tort Claims Act, 28 U.S.C. § 1346(b).

. Thomas F. Cotter, Do Federal Uses of Intellectual Property Implicate the Fifth Amendment?, 50 Fla. L.Rev. 529, 555 (1998) (”[T]he habit, in which both the Federal Circuit and the Court of Federal Claims continue to indulge, of invoking the takings mantra when discussing section 1498 claims is at best anachronistic and at worst misleading.”).

. Lynch v. United States, 292 U.S. 571, 54 S.Ct 840, 78 L.Ed. 1434 (1934), from which Judge Gajarsa seeks support (and which in turn relied for support on the now-overtaken Schillinger opinion), stands on a quite different footing than an inverse condemnation case. Lynch was an insurance contract case, in which the plaintiff’s decedent, by choosing to contract with the Government presumably for his own benefit, had chosen to place his rights in the hands of a sovereign who asserts that it can determine contractual rights as it wants. Whether viewed as a contract remedy or, as Lynch tried to do, as some sort of a taking, the plaintiff’s decedent had for good or ill put himself at risk of the Government’s claim that it is free to change its policy. In Lynch, the case turned on whether Congress, in revoking the insurance program, had withdrawn its consent to be sued under existing contracts—the Court held it had not. 292 U.S. at 583, 54 S.Ct. 840. Whether the Fifth Amendment is available as a remedy in cases involving mutual rights under Government contracts is not at issue here. The issue here is whether the Fifth Amendment protects the individual from the unilateral acts of the sov *1385 ereign, when inverse condemnation is called for, and it makes no constitutional sense to say that persons who did not choose in the first instance to deal with the Government are nevertheless at the mercy of the Government's willingness to pay.